IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

DEREK L. SIMMS, #266549          *
                                *
            Plaintiff,           *
                                *
v.                              *        Civil Action No.: WMN-02-3276
                                *
DR. ISAIAS TESSEMA, *et al.*    *
                                *
            Defendants.          *
            *************************

<u>MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Isaias Tessema, M.D. and Denise VanMeter, R.N., by and through their

counsels, Donald J. Crawford and Adelman, Sheff and Smith hereby move this Court pursuant to

Fed. R. Civ. P. 56(c) to grant summary judgment in favor of defendants.  The grounds for this

motion are set forth in this motion and in the Memorandum of Point and Authorities in support of

this Motion for Summary Judgment, and the depositions, documents and exhibits found attached to

the Notice of Filing Lengthy Exhibits.

WHEREFORE, in view of the governing law and facts of this case, defendants respectfully

request the Court to grant the instant Motion and grant summary judgment in favor of defendants. A

proposed Order is attached.

Adelman, Sheff & Smith, LLC.


By:_____/s/_____
Donald J. Crawford, #11290
200-A Monroe Street, Suite 310
Rockville, Maryland 20850
(301) 340-1140

Counsel for Isaias Tessema, M.D. and Denise VanMeter, R.N.

CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2004, I mailed a copy of the foregoing Motion for Summary Judgment to:  Colleen M. Mallon, Esq., Venable LLP, two Hopkins Plaza, Suite 1800, Baltimore, MD  21201, and to Stephanie Lane-Weber, Esq., Assistant Attorney General, 200 St. Paul Place, 19th Floor, Baltimore, MD  21202.

_____/s/_____

Donald J. Crawford

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

DEREK L. SIMMS, #266549         *

                              *

        Plaintiff,       *

                              *

v.                            *       Civil Action No.: WMN-02-3276

                              *

DR. ISAIAS TESSEMA, *et al.*     *

                              *

        Defendants.     *

                 **************************

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Isaias Tessema, M.D. and Denise VanMeter, R.N., ("medical defendants") by and through his undersigned counsel of record, respectfully submit this Memorandum of Points and Authorities in support of their Motion for Summary Judgment on all counts of plaintiff's, Derek L. Simms, Complaint and Amended Complaint.

**STATEMENT OF FACTS**

On or about December 23, 2002, plaintiff, an inmate at Western Correctional Institution ("WCI"), filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. In his statement of claim, plaintiff, alleges that he was not being properly treated for peri-rectal abscesses secondary to Crohn's Disease, degenerative joint disease in his left knee, seasonal rhinitis, and urination/prostate problems. He requested $150,000 in damages, treatment by outside physicians, a single cell, transfer to an out of state protected unit prison, and undefined medical supplies. A Motion to Dismiss, or in the alternative, Summary Judgment was filed by the medical defendants on March 14, 2003 and responded to by Plaintiff on March 21, 2003. By Memorandum and Order dated may 1, 2003, Judge

Nickerson granted defendants summary judgment with regards to all of Plaintiff's claims except for those relating to his Crohn's disease. Counsel was appointed, and an Amended Complaint filed on September 22, 2003 alleging a deliberate indifference to a serious medical need (Count I) including a failure to prescribe a single cell (which plaintiff had since September 3, 2001) hot water for the sitz baths, and narcotic pain medication, and requested injunctive relief (Count II) including a single cell, pain medication and hot water. The medical defendants answered on October 1, 2003 denying the allegations and presenting a number of affirmative defenses including a plaintiff's failure to comply with 42 U.S.C. §1997(e). Extensive discovery has been conducted and all motions are due June 18, 2004. All previous filing on behalf of the medical defendants are hereby incorporated by reference as if fully set forth herein.

**ADDITIONAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

This section is to present the results of the discovery conducted in this case with regards to the issues for resolution. All citations are to the page of the deposition of the person in question, unless otherwise noted. Bracketed information is added for clarity.

**PLAINTIFF'S HOUSING**

Plaintiff has been housed in a single cell since September 3, 2001. The decision to provide Mr. Simms with a single cell was made by Lt. Shreve and the Division of Correction based on a number of considerations including the availability of cells, his medical conditions and to make his daily living easier. Plaintiff's raising of this issue long after being single celled is disingenuous, except perhaps for his desire to have that status subject to a medical prescription, a prescription Dr. Tessema would not write.

In Dr. Tessema deposition he testified that he would prescribe a single cell for lice, ticks contagious infections, i.e. TB, and wheel chair bound individuals (pp. 95, 96, 97) but not for an individual with peri-anal Crohn's disease (p. 98). Mr. Simms never requested a single cell prescription from Dr. Tessema (P. 99), and Dr. Tessema deposition he was unaware he was housed in a single cell (p. 99). Inmate housing is a DOC not a medical department issue (p. 99).

Ms. VanMeter testified that the only person who can prescribe a single cell is Dr. Tessema (p. 52) and she doesn't remember Mr. Simms ever requesting a single cell (p. 53). She never discussed that issue with Dr. Tessema (p. 54). She did not know who made the decision for Mr. Simms to be in a single cell (p.56), and she has no opinion on the subject since it is not a decision that can be made by her (p. 56).

Warden Galley deposed that he had a brief conversation with Lt. Shreve re single cell status, and Lt. Shreve made the decision for a single cell based on availability, Mr. Simms medical condition (p.68). He added that Dr. Tessema indicated Mr. Simms did not need a single cell. Lt. Shreve's decision was based on his ability to manage the housing unit and was not a medical decision (pp. 71, 72). While Lt. Shreve discussed Mr. Simms case with Dr. Tessema. Dr. Tessema did not prescribe a single cell rather he decided to single cell him based on availability of housing, and a decision to make Mr. Simms life easier (p. 74). Warden Galley has the authority to single cell an inmate he would not use that authority to override a physician's decision about a single cell (p. 75). Further Warden Galley does not have the authority to order Dr. Tessema to place Mr. Simms on single cell status (p. 76). It is not unusual for a medical director at one institution not to follow a recommendation (single cell) at another

institution (p. 90).  Housing unit 4 is a special management unit for disciplinary or administrative

segregation (p. 30) and Mr. Simms in there because a single cell was available and to make his

life easier (p. 31).  Single cells are usually reserved for inmates who are physically impaired,

usually wheel chair bound (p. 32).

**TREATMENT PLAN**

Dr. Tessema has been the Medical Director at WCI since December of 2000.  Prison

Health Services, Inc. took over the contract to provide medical services on July 1, 2000, and Dr.

Jeffery Briggs was the Medical Director prior to Dr. Tessema    As Medical Director, Dr.

Tessema has been Mr. Simms treating physician and determining Mr. Simms treatment plan.

His treatment plan has consisted of continuing the treatment plan established by Dr. Briggs,

prescribing medication to control Mr. Simms peri-anal Crohn's disease, sitz baths, and other

analgesic medications to address his complaints of pain.   Dr. Tessema's prescribed treatment is

discussed more fully below, and Ms. VanMeter's role is one of carrying out the physician's

orders, as she has no ability to prescribe medications or treatments beyond nursing protocals.

In Warden Galley deposition he stated he does not intercede in making medical

judgments of a clinical nature because doesn't have expertise, defers to physician (p. 23), would

not override a medical director's decision as he is not a doctor (p. 24).   He defers to the medical

director on what he prescribes (p. 24) and would not order the medical director to give

medications prescribed by another physician (p. 25).  Warden Galley can not make a judgment as

to proper medical care because he is not a physician (p. 26).  His authority to ban any person

from the prison is for violations of security procedures (p. 29).  Warden Galley has discussed

Mr. Simms with Dr. Tessema and the treatment as described appears to me to be entirely reasonable , and I had no reason to go beyond that (pp. 51, 52).   Based on what Dr. Tessema and the medical staff told him about Mr. Simms treatment and the recommendations form the University Hospital he had no reason to believe an additional or second opinion was needed (p. 53).

**SITZ BATHS**

Sitz baths have been the consistent recommendation for Mr. Simms within the prison system and by off-site consultants.   Dr. Weinstein would prescribe sitz baths (p. 63), although Dr. Lee does not, because they only relieve symptoms and are not a treatment for Crohn's disease (p. 28).

Dr. Tessema believes in and prescribes sitz baths for a number of problems, i.e. hemorrhoids, peri-anal problems, viruses, abscesses, boils, sinuses fistulas etc (p. 87).   He recommends body temp water (P. 88), and salt for abscesses, sprains, and ingrown toenails (p. 89).   Mr. Simms never complained to Dr. Tessema that the water was not hot enough (p. 89) that the basin did not fit into his commode (p. 89) or of cellmate problems (p. 90).   An inmate can not use the Infirmary for sitz baths unless admitted (pp. 92, 93).   Finally the medical department has no control over water temperature it is provided by DOC based on safety standards (p. 94).

In Ms.VanMeter deposition she testified that if sitz baths were ordered she would have given them to Mr. Simms, and he was non-compliant with sitz baths (49).   In fact he once threw his sitz bath materials at the doctor (p. 49).   Sitz baths call for warm water.   Epson salt is not prescribed, and it is the flushing that is the main benefit (pp. 49, 50).   She was unaware of any

complaints by Mr. Simms that the water was not hot enough or that his bath basin did not fit into the commode (pp. 51, 52).

Warden Galley did confirm that Mr. Simms problems with sitz baths was one issue considered by Lt. Sheve in giving Mr. Simms single cell status (p. 86).  All hot water within the institution is set at 120 degrees (p. 88), and the temperature in not appreciably different in the Infirmary (p. 88).

**PAIN MANAGEMENT**

Plaintiff's complaints of pain are subjective in nature and not supported by the objective finding with regards to his peri-anal Crohn's disease.   While narcotic pain medications have been prescribe that have been before and following surgery for abscesses and while he was maintained in the Infirmary.   Pain can be managed in a number of ways including medications and sitz baths, and Dr. Tessema, as Mr. Simms' treating physician, has chosen other analgesic medications to achieve the same or better results of narcotic medications.   This position is supported in Dr. Weinstein deposition.  Dr. Lee, plaintiff's expert, is silent on pain management although she suggested in her deposition two additional test not in her expert report nor recommended by any other off-site consultant/physician.

Dr. Tessema testified that peri-anal Crohn's disease is focused at the end of sigmoid and rectal area and is serious condition (p. 47).  Pain is a subjective complaint (p. 47), and every time Mr. Simms complained of pain it was medically addressed (p. 48).  Dr. Tessema believes in the case of peri-anal Crohn's disease that narcotic pain medications are only appropriate if there is acute pus or abscess pockets, acute infection that has developed into cellulites or infection of the

surrounding tissue (p. 52), and he never found those conditions (p. 52).    Mr. Simms chronic peri-anal Crohn's disease and his subjective complaints of pain were examined each time to see if there were any flare-ups, abscesses, or new acute developments (pp. 52, 53).    Dr. Tessema considers Mr. Simms pain complaints idiopathic i.e. of unknown cause (p. 54).    Dr. Tessema addressed his pain management with analgesics, and Mr. Simms responded to this treatment (pp. 54, 55).    Pain is not a leading sign or symptom of Crohn's disease (p. 55).    A gastroenterologist consult would only be written if there were objective signs of active Crohn's disease or changes in Mr. Simms clinical situation (pp. 55, 56).    Mr. Simms is non-compliant with his medications (p. 56) and at times he has no complaints (p.57).    Dr. Tessema is of the medical opinion that Mr. Simms has been provided adequate medical treatment for Mr. Simms peri-anal Crohn's disease and documented such treatment in the medical record (p. 57).    Narcotic pain medications can be prescribed by any physician or provider at the prison and is generally limited to fractures, acute fractures, surgeries severe trauma and inflammation of the nerves (neuropathies) (pp. 58, 59), but not Crohn's disease (p. 60).    Narcotic pain medications are not a superior medication.    Other analgesics can treat pain equally well or better there are just different families of analgesics (p. 61).    Any time Mr. Simms complained of pain it was addressed (p. 62) by prescribing analgesics (p. 63) or when he requested them (p. 63).    Dr. Tessema does  not see Mr. Simms for pain rather for his chronic peri-anal Crohn's disease (p. 68), and every time he examined him there are no new developments in his peri-anal Crohn's disease (p. 69).    Between February of 2000 and March of 2003 Dr. Tessema does not recall pain being an issue with Mr. Simms and during that period saw him on a regular basis, ordered labs, and renewed medications (p. 71).    During that

period his peri-anal Crohn's disease was under control with the medications prescribed (p. 78), there were no flare-ups (p. 78), and the analgesics addressed his pain complaints (p. 72). Further, his peri-anal Crohn's disease does not warrant narcotic medications (p. 72). Lately [2003] Mr. Simms has been complaining of pain and our investigation has not found any change in his disease process (p. 63). Because Mr. Simms complaint of pain increased in frequency (p. 81) and intensity (p. 82) after March of 2003, although not supported by examination (p. 83), I prescribed another analgesic to help him deal with the pain (p. 83). Mr. Simms recent colonoscopy, flexible sigmoidoscopy or proctosigmoidoscopy did not evidence any change in his condition warranting narcotic medications (p. 84). As Mr. Simms treating physician, Dr. Tessema decides what analgesic to use, and I chose a non-narcotic analgesic (p. 86). Which medication is prescribed is my clinical judgment (p. 87).

Ms. VanMeter does not give out medication (p. 38) but believes Mr. Simms is non-compliant with medications (pp. 38, 39). Narcotic pain medication are prescribed by the physician and/or psychiatrist (p. 41), and she does not know the factors considered by the physician when prescribing narcotic medication. The only nursing protocol for pain permits Tylenol (p. 42 and p. 45). An inmate is seen three times by a nurse before being referred to the next level of provider [a doctor or physician's assistant] even if the complaint is that the Tylenol is not eliminating his subjective complaints of pain (p. 43). Narcotic medications are all administered on a watch/take basis (p. 46). She is not aware of Dr. Tessema referring an inmate to a specialist because of pain (p.46).

**OFF-SITE CONSULTATIONS**

The determination as to whether an inmate should be sent for off-site consultations is one made by his treating physician, based on his evaluation of the inmate's condition and any changes in his condition warranting such a consultation.   Dr. Tessema never found any changes in Mr. Simms' peri-anal Crohn's disease to warrant off-site consultations, but in 2003 the frequency and intensity of Mr. Simms pain complaints caused Dr. Tessema to order significant off-site consultations that found no changes in Mr. Simms chronic peri-anal Crohn's disease.

Dr. Tessema may call an off-site consultant to determine what tests, labs or procedures he needs before seeing him (pp. 37, 38) but he does not tell the what procedure to do or what to prescribe (pp 38, 39).   In any given month 10 inmates may go out for various off-site consultations (p. 39). While Dr. Tessema can override a surgical recommendation based on whether it is elective (pp. 40, 41) it is not about authority but rather medical ethics (p. 41).   As the primary physician if I believe surgery is necessary I give the go ahead (p. 41), and while I can request a procedure, it is the utilization review by PHS that make the ultimate decision (p. 42).   Whether a procedure is done is based on my clinical judgment (p. 43 and p. 45).   Dr. Tessema might call the off-site consultant (p. 43) if he don't understand what they say, and/or their reasoning (p. 44).   Between February of 2000 and March of 2003 Mr. Simms Crohn's disease was in remission without flare-up (p. 102).   In Dr. Tessema's clinical judgment there have been no changes in Mr. Simms condition, and the tests done in 2003 confirm his clinical judgment (pp. 104, 105).   I have not seen any change in Mr. Simms peri-anal Crohn's disease since I came to WCI, no flare-ups, no new symptoms and no worsening of any objective symptoms (p. 124).   Mr. Simms was not referred off site because his complaints were being

handled on-site (p. 125), and I was comfortable handling them on-site. (p. 125).

Ms. VanMeter has no role in determining if an inmate is sent a specialist since it is the treating physician who decides on whether an inmate should be seen by a specialist (p. 59).

## CHRONIC CARE CLINIC

The Division of Correction defines chronic care clinics (inmate to be seen every three months for review) and which illnesses will be followed in chronic care clinics and they include hypertension, seizure, diabetes and other illnesses, but Crohn's disease or other gastroenterological problems. Despite the lack of any formal chronic care clinic, Dr. Tessema follows Mr. Simms as if he were in a chronic care clinic.

While DOC does not have a GI chronic care clinic Dr. Tessema sees Mr. Simms every 2 to 3 months to renew prescriptions, assess symptoms and do labs (p. 49), and has done so he began working at WCI (p. 50). He provides regular follow up for Mr. Simms similar to a chronic care clinic making sure he is seen, gets labs and refills of medications (p. 123), and has not seen any change in Mr. Simms peri-anal Crohn's since coming to WCI, no flare-ups, no new symptoms and no worsening of any objective symptoms (p. 124).

## MEDICAL OPINIONS

Both Plaintiff and the medical defendants have hired physicians who are board certified in gastroenterology. Both have examined Mr. Simms medical record including the off-site consultations contained in the Notice of Filing Lengthy Exhibits, Exhibits 7, A through G and Exhibit 8, A through G.   Both agree on the diagnostic tests performed, although Dr. Lee added two additional diagnostic tests not recommended by any other physician or contained in her Rule

26 report which has not been supplemented as required by Rule 26, (e).    Dr. Lee, a physician

associated with a teaching hospital that is non-participating with insurance plans, believes every

Crohn's disease should only be treated by a specialist.    On the other hand Dr. Weinstein takes

the more practical approach that if there have been no significant changes in the disease

consultation with a specialist, while desirable, is not necessary since any physician has access to

the research and treatments available to a specialists.

Dr. Weinstein is board certified in gastroenterology (p. 5), internal medicine (p. 6) and

has been in practice for 19 years (p. 6).    He is affiliated with George Washington, Sibley

Memorial and Suburban Hospitals (p. 7) and licensed in Maryland and D.C. (p. 10).   He has

testified 7 or 8 times approximately 50 % for plaintiff's and 50% for defendants (pp. 13, 14) and

reviewed Mr. Simms medical records and talked with Dr. Tessema in preparing his report.  Dr.

Weinstein did not discuss his report with counsel nor are their drafts of his report (p.30).   Mr.

Simms peri-anal Crohn's disease is a serious condition, (p. 30).   He is not sure it is a painful

condition because at times there are no complaints of pain, and sometimes the disease is active

and at sometimes it is inactive (p. 31).   Dr. Weinstein opined that Mr. Simms has had peri-rectal

abscesses and fistula (p. 34).   His basic opinion as a specialist is that intermittent consultation

with a specialist with a referral from a competent internist is the typical situation without flare-

ups and complications (p. 37).   In fact he has patent he sees once a year because they are stable

(p. 38).   When asked about assessing a patient, Dr. Weinstein stated that one begins by asking

the patient questions as to the activity of his disease, frequency of problems, severity, and history

of the disease (p. 39).   The history is followed by an examination including the patient's

response to the examination and the doctor's interpretation of the findings (pp. 39, 40), blood counts, liver chemistries and stool cultures are needed when complaints of diarrhea, fistula or drainage (p. 40) and x-ray studies, CT scans, sigmoidoscopies and colonscopies as also needed (p. 40).   Generally non-compliant patients do worse (p. 41) but compliant patients may not do better (p. 41).   Plaintiff's complaints were not ignored (p. 43) he was seen and evaluated by Dr. Tessema or nurses or nurse practitioner or other heath care provider including outside consultants (p. 44). Between February of 2000 and March of 2003 the individuals who examined Mr. Simms made meaningful evaluations as health care providers (p. 47).   Mr. Simms was both compliant and non-compliant with his treatment based exclusively on review of the medical record (pp. 48, 49).   Dr. Weinstein is of the opinion that nothing in the medical record for the period of time Mr. Simms has been at WCI shocks him (p. 54), and not sending him to a specialist for 42 months does not shock his conscience (p. 55).   Specialist follow up is dependent on the treating physician's assessment of whether or not the disease is active (p. 55), but, "I would not want to see the patient in follow-up if there was nothing to see" (p. 56).   Between February of 2000 and August of 2003 there was nothing to seek a specialist's opinion about (p. 57).   It is a specialist's expertise on new treatments etc that is the reason for seeking consultations (p. 59).   The only difference between Dr. Tessema's treatment and mine is that I might have been more aggressive with other immune modulator medications, but I would have prescribed sitz baths and antibiotics and the tests ordered and probably would have had the same problem with the pain issues (p. 63). Since the patient was stable between February of 2000 and August of 2003, I would not order CT scans or sigmoidoscopies (p. 65).   The treatment of

Crohn's disease is not rocket science and treatment is available in the literature (p. 65). "You know, I'm a specialist so I'm somewhat biased in my belief that I can do it better that someone else, but I would be grossly, you know, pompous, if I thought that nobody else could do it as well as I could, including a generalist, or someone with lesser training than I have. Because all I know is from what I've read and my experience and that information is available to everybody" (p. 67). There may be 20 different treatments and a patient may have been the same with all 20 (p. 67), and sometimes doing nothing may actually be the correct treatment (p. 69. Once an abscess is draining there is little treatment necessary (p. 69). The fact that Mr. Simms did not see a GI specialist for 42 months  had no impact on the course of his disease because he had no significant change in the course of his disease, and he was treated with reasonable medications used all the time. More dangerous treatments were avoided, and he suffered no complications. If he had done worse, he would have been sent to a specialist (p. 71).  With regard to pain, you have to look at the condition and divorce yourself from the pain (p. 71). Pain is tough to treat (p. 71), and one must determine if is it related to the disease (p. 71), or is it drug seeking behavior (p. 72), or is it a complaint to obtain further heath care or drugs, particularly in a patient with a history of drug abuse (p. 72).  It is impossible to treat abusive patients with narcotics (p. 72). Mr. Simms has been given psychotropic medications for his chronic pain (p. 73) and his pain complaints were treated short of providing narcotic medications (p. 73).  I did discuss with Dr. Tessema the short term use of narcotics and he told me they use them postoperatively (p. 75), or for injuries such as fractures (p. 76). Mr. Simms has been prescribed narcotic analgesics relating to abscess drainage procedures (p. 79) and short term use is reasonable (p. 80).  When asked

about narcotic analgesics costs he said they are cheaper that non-narcotic analgesics (p. 81). Dr. Tessema has an impression that Mr. Simms complaints of pain were beyond his objective findings and that was corroborated by the psychiatrist notes (p. 85). If everything is stable, I would not change my treatment of the patient's Crohn's disease solely because of pain complaints (p. 88), and I would not consider short term narcotic use (p. 88). I would consider a single cell for active drainage that could not be contained that might contaminate another patient (p. 89). Sitz baths are an appropriate treatment (p. 90) and recommends hot water without salt (p. 91). Mr. Simms peri-anal Crohn's disease has been well controlled (p. 92). Dr. Weinstein believes the consultations in 2003 were "cover your ass consultations" (p. 95), because he takes legal complaints seriously and, "I want lots, lots, of people looking over my shoulder." (pp. 95, 96). The consultations were not necessary based upon any change in the patient's condition (p. 95). If the health care provider does not feel there is a need for a specialists consultation, I think that is perfectly proper (p. 97), but like all specialists I would have liked to have seen the patient (p. 97). When asked about the use of 6MP, a toxic drug not easily prescribed, he expressed the opinion that Mr. Simms may or may not have benefited from an earlier introduction (pp. 100, 101). His pain complaints were addressed with the psychotropic drugs (p. 101). Mr. Simms' peri-anal Crohn's disease is well controlled (p. 105), and that the use of "remission" is a poor choice of words (p. 105).

Dr. Linda Lee expressed the opinion that Mr. Simms Crohn's disease is limited to the peri-anal region or anus (p. 7) and that remissions do occurs (p. 8). She read Dr. Tessema deposition and was aware that Dr. Tessema stated that Mr. Simms has been in remission since

2000 (p. 8), and his determination was made by physical exam, clinical presentation, and tests such as a sigmoidoscopy, x-rays, lab tests and colonoscopy (p. 9).   While currently treating maybe 15 patients with peri-anal Crohn's (9) she does not treat any patients that are obese, suffer from major depression, anxiety disorder suicidal idealations, hepatitis C or cocaine abuser (pp 9, 10).   Dr. Lee has no prison experience (pp. 10, 11).  She recalls medical records indicating Mr. Simms has an exaggerated reaction to pain (p. 12), but it is difficult for her to evaluate without meeting Mr. Simms (p. 13), and further believes it to be an inappropriate phrase (p. 13) because you can't quantify pain (p. 13).    From 1986 to 1997 Dr. Lee agrees that Mr. Simms was receiving emergency room treatment of symptoms and not diagnostic evaluation (pp. 14, 15), and it was within the realm of possibility during that period he was being treated for hemorrhoids (pp. 15, 16).  Her personal definition of remissions is no drainage, no fistula and no pain (p. 17). Dr. Lee is non-participating, meaning that her patients pay regardless of any insurance (p.18). On 3/18/98 a flexible signoidoscopy was performed at Sacred Heart Hospital and was unremarkable except for scarring (pp. 19, 20) and tissue biopsy was also unremarkable (p. 20). On 7/17/98 a CT Scan was done and it was normal or unremarkable (p. 21).   Dr. Lee would have ordered the same test, and at the time it was commonly used to detect abscesses (p. 22).  On 6/11/99 a small bowel series was done, and was normal or unremarkable (p. 23) and she would have done the same (p. 23), because patients with isolated peri-anal Crohn's disease may develop active Crohn's elsewhere (p. 24).   Despite the fact that the CT scan was normal and no abscesses found she would have considered additional testing to find out why the patient was having pain (pp. 24,25). On 6/17/99 a colonoscopy was performed and it was normal or

unremarkable except for peri-anal hardening [resulting from previous surgeries] but she added that test simply showed no colonic involvement (p. 25).    Mr. Simms is seen in UMMS Gastroenterology Dept. on 8/9/99 and they recommended Flagyl, sitz baths, Amersol, repeat of CT Scan, and schedule a surgical evaluation. The CT scan was repeated on 10/29/99 and no significant changes from 7/17/98 CT scan were noted (pp. 26, 27).    Again Mr. Simms was seen in Gastroenterology Dept. on 1/2/00 and they recommended Flagyl, Sulfacid and sitz baths (pp. 27, 28).    Dr. Lee did not agree with the recommended sitz baths, despite the fact that she recognizes they are recommended and they relieve symptoms (p. 28).    Even if all tests were negative or unremarkable and there is no drainage or abscesses, but pain is present, she would not consider Mr. Simms in remission and pursue the pain issue (p. 30).    Despite not being contained in her un-supplemented Rule 26 report she would do a rectal ultrasound and MRI scan for micro-abscesses (p. 30) and if they were negative then she would find remission despite the pain.    She did not believe that throwing a sitz bath is non-compliance (p. 31) and she would like to determine how it relates to his psychological illness (p. 32).    She would also like to understand why he is non-compliant with Flagyl (p. 32).    A CT scan with contrast of pelvis on 9/10/03 found no abscesses but she expressed the opinion that it may not be 100% sensitive (p. 33).    On 8/27/03 upper GI series unremarkable 9/23/03 lower GI series unremarkable.    On 11/3/03 a flexible sigmoidoscopy was also unremarkable – no evidence of Colitis.    Dr. Lee disagreed with the recommendation of the UMMS surgical clinic of Remicade, if active abscesses are present, Colace and sitz baths rather she would have increased his dosage of  6MP (pp. 35, 36)    That was her only disagreement (p. 37).    On 1/9/04 proctosigmoidoscopy

performed, under anesthesia that included manual manipulation of the anus to discover hidden collections of pus (37 38), and test was unremarkable, but she believes it is not sensitive enough to detect micro-abscesses (p. 38).   She did not  recall the UMMS report suggesting hemorrhoids (p. 39) (see Exhibit 7, G) nor their recommended of continuing the course of medication treatment and sitz baths (p. 39).   Dr. Lee differs with that recommendation (p. 39) because Mr. Simms persistent pain makes her concerned about micro-abscesses (p. 40).   She did acknowledge there is no objective test for pain but it is a symptom he reports (p. 40).

**REQUSITE KNOWLEDGE**

In order to find "deliberate indifference" on the part of the medical defendants, a two pronged test must be met.   One prong is objective and the other subjective.   Mr. Simms peri-anal Crohn's disease meets the objective test, but the evidence clearly demonstrates that neither medical defendant had the state of mind whereby they were disregarding Mr. Simms medical condition thereby creating a substantial risk of injury to Mr. Simms.     The evidence shows just the opposite.   They were constantly concerned about his complaints and treatment and during the entire period his per-anal Crohn's disease was well controlled and no risk to his health occurred.

Dr. Tessema is a graduate of Addis Ababa University, Ethiopia with a Doctorate of Medicine (p. 9), migrated to the U.S. because of political reasons (p. 14), has been certified in family practice since 2000 (23), and licensed in MD, VA and DC (24).   As Medical Director I evaluate inmates every working day (p. 28); 10 to 12 in the infirmary, and about 8 in segregation (p. 30) averaging 20 to 30 per day (p. 31).   While Dr. Tessema can override a surgical recommendation based on whether it is elective (p. 40, 41) his decisions are not based on

authority but rather ethic (p. 41).    Each of Mr. Simms complaints concerning his peri-anal

Crohn's disease and subjective complaints of pain are evaluated and he is examined to see if

there are any flare-ups or new acute developments (p. 53), but he never saw any flare-ups or

abscess pockets (p. 52).   Dr. Tessema consider Mr. Simms pain complaints idiopathic i.e. of

unknown cause (p. 54).   I have addressed his pain management with analgesics and Mr. Simms

has responded to this treatment (pp. 54, 55).   Narcotic pain medications are not superior, other

analgesics can treat pain equally well or better there are just different families of analgesics (p.

61).   Any time Mr. Simms complained of pain it was addressed (62) by prescribing analgesics

(63) or when he requested them (p. 63).    Between February of 2000 and March of 2003 I don't

recall pain being an issue with Mr. Simms.   He was seen on a regular basis, labs ordered, and

medications renewed (p. 71).   During the period his Crohn's disease was under control with the

medications prescribed (p. 78), there ware no signs of flare-ups (p. 78), and the analgesics

addressed his pain complaints (p. 72).    In my medical judgment his peri-anal Crohn's disease

does not warrant narcotic medications (p. 72).    I have not seen any change in Mr. Simms peri-

anal crohn's since I came to WCI, no flare-ups, no new symptoms and no worsening of any

objective symptoms (p. 124) and was not referred off site because his complaints were being

handled on-site (p. 125)  and I was comfortable handling them on-site. (p. 125).

Ms. VanMeter is a registered nurse who after graduation worked as a med-surg. R.N. at

Washington County Hospital (p. 10) and started in the prison system in 1996 when WCI opened

(13) and began working for PHS when they took over the contract on July 1, 2000 (p.13).   She

works 4 days a week (p. 17) and triages sick call requests, (p. 17) and sees inmates 4 days a

week but no more than 12 a day (p. 19). She works daily with Dr. Tessema, and he or his designee signs off on all sick call requests. Dr. Tessema is not her immediate supervisor (pp. 22 and 23) and she treats inmates in accordance with nursing protocols (p. 28). Mr. Simms is examined in the medical room in housing unit 4 (p. 29). Dr. Tessema makes off-site consultation decisions without input from the nurses (pp. 30, 31). Ms. VanMeter guesses that Crohn's disease could be a serious condition (p. 35), but she has not seen Mr. Simms since May 29, 2003 (p. 36). She believes Dr. Tessema treats Mr. Simms Crohn's disease on a regular basis (p. 37), and she simply implements the treatment plan found in the physician's orders (p. 38).

**EXHAUSTION**

Warden Galley described how inmate complaints are handled. Inmates complaints can be ARPs, letters to unit managers, Ms. Pearson, to assistant warden or him or it can be sent to the Inmate Grievance Commission (p. 38). Mr. Simms is a prolific complainer and has filed many ARPs (p. 39) about medical and housing issues (p. 40) and disciplinary reports (p. 40). Warden Galley is only aware of his Crohn's disease because of the lawsuit (p. 41). ARP's are investigated by officers, who speak with a nurse or medical director to find out what is going on with the complaint (p. 47). They don't evaluate clinical decisions because they have no basis to do so [medical training] (p. 48), but do review what they have control over such as keeping medical appointments (p. 48). They rely on the information provided by the medical personnel because neither are in a position to substitute our judgment for that of the medical director (p. 50). After an ARP is dismissed the inmate may appeal to headquarters or to the inmate grievance commission (p. 61). If denied by the commissioner he can appeal to the inmate

grievance commission (p. 62) and if denied he may go into circuit court or file a §1983 action (p.

62).

## II.  ARGUMENT

### A.    Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate:

> If the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that there
> is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law.

The burden of showing that there is no genuine dispute of material fact is on the moving party.

Weinberger v. Bristol Myers Co., 652 F. Supp. 187 (D. Md. 1986) citing Celotex Corporation v.

Catrett, 577 U.S. 317, 106 S. Ct. 2548, 2554-55 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144,

157 (1970).  The moving party, however, need not negate the non-moving party's case; the moving

party need only disclose the absence of evidence to support that case.  Weinberger, 652 F. Supp. At

189.  Once the moving party has met this burden, the non-moving party must set forth facts showing

a genuine issue for trial.  Weinberger, 652 F. Supp. At 189.  In doing so, the non-moving party must

do more than simply set forth "some alleged factual dispute…the requirement is that there be no

genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, the non-moving party "may not rest upon mere allegations or denials of his pleading, but

must set forth specific facts showing that there is a genuine issue for trial."  Rivanna Trawlers

Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 240 (4th Cir. 1988).

When exercising its affirmative obligation to prevent factually unsupported claims and

defenses from proceeding to trial, [1] a federal district court s required to view the material facts, and the inferences properly drawn there from, in the light most favorable to the non-moving party. Weinberger, 652 F. Supp. At 189. All inferences, however, must be firmly based upon established facts. Carroll v. United Steel Workers of America, 498 F. Supp. 976, 978 (D. Md.), aff'd, 639 F. 2d 778 (4th Cir. 1980).

Since this is a non-jury trial and discovery has been completed, this matter is ready for resolution. A review of Dr. Tessema's and Ms. VanMeter's depositions, and plaintiff's allegations, makes it clear that plaintiff's complaints are without substance. Mr. Simms has peri-anal Crohn's disease, a chronic condition that is being conservatively treated with medications, and sitz baths. As noted in Wright v. Collins, 766 F.2d 841(1985) at page 847, "Disagreement between an inmate and a physician over the inmate's proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." No exceptional circumstances are alleged by Mr. Simms. Even conflicting medical opinions does not rise to the level of deliberate indifference, see Bowring v. Goodwin, 551 F.2d 44 (4th Cir. 1977). In fact, there has been no change in his peri-anal Crohn's disease over the past four years, and for almost three years of that time Mr. Simms has enjoyed single cell status.

Mr. Simms' medical treatment meets community standards, and is appropriate under the circumstances. His complaint is devoid of any allegations of a deliberate indifference to a serious medical need. None of the actions of the medical defendants meet the subjective standard of Farmer v. Brennan, 114 S.Ct. 1970 (1994). In fact, the depositions of Dr. Tessema

---

[1] See Felty v. Graves-Humphreys Co., 181 F.2d 1126, 1128 (4th Cir. 1987) citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2553 (1986).

and Ms. VanMeter show a well developed medical treatment plan that address Mr. Simms'
complaints.    While Mr. Simms may disagree with the analgesics prescribed for his pain, his pain
complaints were addressed, a single cell was provided by DOC as was the hot water.    The
medical defendants were simply delivering medical services and the delivery of the medical
services caused no damages permanent or otherwise, see Memorandum Opinions of the
Honorable Benson Everett Legg, in <u>Nicholas Warner Jones v. Thomas Corcran et al.</u>, L-97-350
page 7, and <u>Dwight White v. Patrician Allen et al.</u>, L-02-2779 pages 3 and 4.

**B.    Plaintiff has failed to state a cause of action for deliberate indifference against Isaias
Tessema M.D. and Denise VanMeter, R.N. because the medical defendants did not and could
not draw the inferences of a risk of substantial harm to the inmate's health.**

In examining Fourteenth Amendment claims, the trial courts in this circuit look to the
decisional law to examine and evaluate the claim.    The Eighth Amendment prohibits punishments
which involve the unnecessary and wanton infliction of pain, those which are grossly disproportional
to the severity of the crime for which an inmate is imprisoned, or are totally with penological
justification.    <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981).    Not every governmental action
affecting the interests of a prisoner is subject to Eighth Amendment scrutiny.    <u>Whitley v. Alberts</u>,
475 U.S. 312, 319 (1986).    "It is obduracy and wantonness… that characterize the conduct
prohibited by the Cruel and Unusual Punishment Clause…"    *Id.*    The Supreme Court has cautioned
that conditions are not unconstitutional simply because they are harsh and restrictive; such
conditions are "part of the penalty that criminal offenders pay for their offenses against society."
<u>Rhodes</u>, 452 U.S. at 347.

The Eighth Amendment "is specifically concerned with the unnecessary and wanton

infliction of pain in penal institutions" and "serves as the primary source of substantive protection to convicted prisoners." Whitley, 475 U.S. at 327. Eighth Amendment claims must be brought under 42 U.S.C. §1983. However, §1983 claims can only be asserted against those alleged to be personally responsible for the purportedly cruel and unusual punishment. Plaintiff makes no specific allegations of wrongdoing other than the prescribing and delivering of care to Mr. Simms as determined by his treating physician and partially executed by Ms. VanMeter.        To    state    a claim for cruel and unusual punishment against the medical defendants, plaintiff must allege conduct characterized by "obduracy and wantonness," not conduct that is "inadvertance or error in good faith." Whitley, 475 U.S. at 319. Such conduct would include "pain without any penological purpose," (see Estelle v. Gamble, 429 U.S. 97, 103 (1976)), or conditions that result in an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347; *see also* Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia, 93 F.3d 910, 928 (D.C. Cir. 1996).

In analyzing deliberate indifference two prongs must be met, first objectively the alleged deprivation must be "a condition of urgency, one that may produce death, degeneration or extreme pain" see Hathaway v. Coughlin, 37 F.3d 63 at 66 (2d Cir. 1994). For the purposes of this section it is assumed that the objective prong is met.  The second prong is the subjective, and requires a state of mind wherein the individual must knows of and disregards an excessive risk to an inmates health and safety by being "aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 114 S.Ct. 1970 at 1979 (1994).   The record before this court fails to satisfy the subjective prong.

The deposition of Dr. Tessema and Ms. VanMeter, summarized above, demonstrate that each was delivering health care to Mr. Simms as prescribed by Dr. Tessema and his medical concerns were addressed consistent with a prison setting.    In fact, Mr. Simms peri-anal Crohn's disease was stable during the entire period.    There is no evidence of a pattern or practice on their part, nor is there any evidence that Mr. Simms condition changed during the entire period let alone causing and damages permanent or otherwise see Nicholas Warner Jones v. Thomas Corcran et al., L-97-350 page 7.    Neither demonstrated the "obduracy and wantonness" required for deliberate indifference, see Whitley v. Albers, 475 U.S. 313, 319.    Clearly neither defendant had a culpable state of mind nor any actions by either that can be construed as "an unnecessary and wanton infliction of pain" Estelle v. Gamble, 429 U.S. 25,105.

**C.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claim**

Plaintiff sues defendants pursuant to 42 U.S.C. §1983 to recover damages to alleged civil rights violations, presumably impinging upon his Eighth Amendment or Due Process rights. However, a fair reading of plaintiff's complaint reveals that plaintiff is attempting to plead, at best, a claim of negligence.

Simply stated, the Court lacks the subject matter jurisdiction over plaintiff's claim.    28 U.S.C. §1331 provides that the District Courts shall have original jurisdiction of all civil actions there is diversity and where the matter in controversy exceeds seventy-five thousand dollars and those arises under the Constitution, laws, or treaties of the United States, such as 42 U.S.C. §1983. A case arises under federal law only if a right created by federal law is an essential element of the cause of action.    Phillips Petroleum Co. v Texaco, Inc., 415 U.S. 125, 127 (1974).    Moreover, a

federal court presumptively lacks jurisdiction until a party demonstrates that federal question jurisdiction exists.  See Mansfield Coldwater Lack Michigan Railroad Co. V. Swan, 111 U.S. 379, 382 (1984).

In sum, the alleged Eighth Amendment claim that plaintiff was subjected to negligent treatment or medical malpractice must be dismissed as a matter of law for failing to state a claim upon which relief may be granted.  Even if plaintiff could state a claim for negligence or some other tort, this Court still must dismiss his Complaint with prejudice.  The Supreme Court has repeatedly cautioned federal and state courts against enlarging the "commodious" contours of § 1983 of the Fourteenth Amendment so as to displace state law.  *See, e.g.,* Daniels v. Williams, 474 U.S. 326, 332 (1986); Paul v. Davis, 424 U.S. 693, 701 (1976).  Thus, the mere fact that the alleged conduct was performed by a state actor does not support its characterization as a constitutional wrong.  Daniels, 474 U.S. at 530-32.  Rather, it is grievous and flagrant governmental abuse which demands a constitutional response.  Davis v. Bucher, 853 F.2d 718, 721 (9th Cir.  1988); *see also* Gardner v. Benton, 452 F. Supp. 170, 173 (E.D. Okla. 1977) (denied use of gym and communal activities not sufficient "grievous losses" to invoke a constitutional response); Davis, 853 F. 2d at 720 n.3 (isolated and limited tortious conduct in the prison does not violate resident's constitutional rights).

The plaintiff in the instant civil action neither demonstrates that federal questions jurisdiction exists nor affirmatively alleges facts nor has discovery presented sufficient to establish such jurisdiction.  At most, plaintiff's allegations attempt to state a common law negligence claim that does not confer federal question jurisdiction upon this Court.    Since the alleged medical malpractice tort arose in Maryland it would be subject to the provisions of the Maryland Health Care

Malpractice Claims Statute, Md. Cts. & Jud. Proc. Code Ann. §§ 3-2A-01 t0 3-2A-09.

**D.    Plaintiff has failed to exhaust his administrative remedies**

Plaintiff has failed to exhaust his administrative remedies and more significantly has failed to allege anything to the contrary, and should do so before bringing a §1983 claim, see Booth v. Churner, 532 U.S. 731, 733-34 (2001), Jackson v. District of Columbia, 254 F.3d 262, 269, 270-71 (D.C. Cir. 2001).   Plaintiff's complaint is devoid of any allegations with regards to exhaustion and Plaintiff's pleadings are devoid of any statements concerning exhaustion.   Why should this Court hold an evidentiary hearing to in order to decline hearing the action because of the mandatory language of §1997e ("No action shall be brought….") see Ninth Defense in Defendants' Answer.

**CONCLUSION**

Based on the above, Isaias Tessema, M.D. and Denise VanMeter, R.N.,  respectfully request that this Court to enter summary judgment in their favor.

Respectfully submitted,

ADELMAN, SHEFF & SMITH, LLC.


By: _____/s/_____
　　　Donald J. Crawford,  #11290
　　　200-A Monroe Street, Suite 310
　　　Rockville, MD 20850
　　　(301) 340-1140
　　　Attorneys for Isaias Tessema, M.D. and Denise VanMeter, R.N.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Motion, Memorandum of

Points and Authorities, and Order were mailed, postage prepaid, on this 18th day of June 2004, to: Colleen M. Mallon, Esq., Venable LLP, two Hopkins Plaza, Suite 1800, Baltimore, MD 21201, and to Stephanie Lane-Weber, Esq., Assistant Attorney General, 200 St. Paul Place, 19th Floor, Baltimore, MD 21202.

_____/s/_____
Donald J. Crawford, # 11290

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

DEREK L. SIMMS, #266549        *

                           *

        Plaintiff,         *

                           *

v.                         *     Civil Action No.: WMN-02-3276

                           *

DR. ISAIAS TESSEMA, *et al.*     *

                           *

        Defendants.      *

                  **************************

ORDER

     UPON CONSIDERATION of Defendants', Isaias Tessema, M.D. and Denise VanMeter,

R.N., Motion to Dismiss for Summary Judgment, and any response thereto, it is this

_____day of _____, 2004 by the United States District Court of Maryland;

     ORDERED, that the motion is granted and judgment entered in favor of Defendants.



                        _____

                        William M. Nickerson
                        United States District Judge

Donald J. Crawford, Esq.
200-A Monroe Street, Suite 310
Rockville, MD  20850

Colleen M. Mallon, Esq.
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD  21201

Stephanie Lane-Weber, Esq.
Assistant Attorney General
200 St. Paul Place, 19th Floor,
Baltimore, MD  21202

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

DEREK L. SIMMS,                     *
                                    *
            Plaintiff,              *
                                    *
                                    *      CASE No.: 1:02-CV-01783 WMN
v.                                  *
                                    *
ISAIAS TESSEMA, M.D., *et al.*      *
                                    *
            Defendants              *
        *************************

<u>NOTICE OF FILING LENGTHY EXHIBITS</u>

Defendants, Isaias Tessema, M.D. and Denise VanMeter, R.N (collectively "medical defendants"), by and through their attorneys, Donald J. Crawford,  and Adelman, Sheff & Smith hereby notify all parties to the above captioned litigation that on June 18, 2004 the following exhibits originals and two copies, were filed with the United States District Court.   The following documents and exhibits were filed: Exhibit 1-deposition Isaias Tessema, M.D. with exhibits; Exhibit 2-deposition of Denise VanMeter, R.N. with exhibit; Exhibit 3-deposition of Michael Weinstein, M.D. with exhibits; Exhibit 4-deposition of Linda A. Lee, M.D., with errata sheet, and Expert Report of Linda A. Lee, M.D.; Exhibit 5-deposition of Jon Galley with exhibits; Exhibit 6-Questions to Lt. James Shreve from Plaintiff, and his answers: Exhibit 7 medical records from Sacred Heart Hospital, Exhibit A-records of CT examination on 7/17/98, Exhibit B-medical records of Small Bowel Series 6/11/99, Exhibit C-medical records of Colonoscopy on 6/17/99, Exhibit D-medical record of CT scan of the abdomen and pelvis,

Exhibit E-medical rceords of a flexible sigmoidoscopy on 11/2/99, Exhibit F-medical record of an x-ray study on 1/21/02, Exhibit G-medical records of a CT scan of the pelvis with contrast; and Exhibit 8 medical records from the University of Maryland Medical System ("UMMS"), Exhibit A-Off- site Consultation and medical records from UMMS for the consultation on 8/27/03, Exhibit B-Off site Consultation and medical records from UMMS for the consultation on 9/23/03, Exhibit C-UMMS medical record of a flexible sigmoidoscopy of 11/3/03, Exhibit D-Off-site Consultations with the Surgical Clinic at UMMS on 1/9/04, Exhibit E-UMMS report from the Gastroenterology Department dated 1/13/04, Exhibit F-medical report of a sigmoidoscopy performed under anesthesia, Exhibit G-Off-site consultations dated 2/13/04, 3/5/04, and 3/26/04.

The undersigned counsel hereby certifies that on June 18, 2004, I sent a copy of this notice along with all documents and exhibits by first class, postage prepaid mail to the following counsel: Colleen M. Mallon, Esquire, Venable LLP, two Hopkins Plaza, Suite 1800, Baltimore, MD 21201, and to Stephanie Lane-Weber, Esquire, Assistant Attorney General, 200 St. Paul Place, 19th Floor, Baltimore, MD 21202.

ADELMAN, SHEFF & SMITH, LLC.


By: _____/s/_____
    Donald J. Crawford, #11290
    200-A Monroe Street
    Suite 310
    Rockville, Maryland 20850
    (301) 340-1140

Attorneys for medical Defendants, Isaias

Tessema, M.D. and Denise VanMeter, R.N.