# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEREK L. SIMMS,                          *

     Plaintiff,                          *

     v.                                  *          Civil No. WMN-02-3276

ISAIAS TESSEMA, MD., ET AL.,             *

     Defendants.                         *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendants, former Commissioner William Sondervan and Warden Jon P. Galley, by their attorneys, J. Joseph Curran, Jr., Attorney General of Maryland and Stephanie Lane-Weber, Assistant Attorney General, move, pursuant to Fed.R.Civ.P. 12(b), to dismiss the amended complaint filed herein or, in the alternative, move, pursuant to Fed.R.Civ.P. 56 for summary judgment. The grounds of the Motion are:

1.    The amended complaint fails to state a claim upon which the relief prayed can be granted.

2.    There is no genuine dispute as to any material fact and these Defendants are entitled to judgment in their favor as a matter of law.

3.    This action is barred by qualified immunity.

4.    This action must be dismissed because it has been filed in violation of the statute of limitations.

5.    Plaintiff has not exhausted his administrative remedies.

WHEREFORE, the Defendants, former Commissioner William Sondervan and Warden Jon P. Galley, pray that this Court dismiss the amended complaint or, in the alternative, award them summary judgment. In support of this Motion, Defendants submits the accompanying Memorandum of Law and Exhibits.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

_____
STEPHANIE LANE-WEBER
Assistant Attorney General
Trial Bar No. 00023

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6340 (Telephone)
(410) 576-6880 (Telefax)

Attorneys for Defendants
Warden Jon Galley and former
Commissioner William Sondervan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18 day of June, 2004, a copy of the foregoing Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Memorandum in Support thereof, and Exhibits were e-filed to:

Colleen M. Mallon, Esquire
Venable, Baetjer & Howard LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201

2

Donald Crawford, Esquire
Godard, West, Adelman, Sheff & Smith
200-A Monroe Street, Suite 310
Rockville, Maryland  20850


_____
STEPHANIE LANE-WEBER
Assistant Attorney General

G:\LANEWEBS\WPDATA\SIMMS\Pleadings\Simmsmtdsj.wpd
CL03-4044

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

`

DEREK L. SIMMS,                          *

      Plaintiff,                      *

      v.                              *          Civil No. WMN-02-3276

ISAIAS TESSEMA, MD., ET AL.,             *

      Defendants.                     *

*      *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendants, former Commissioner William Sondervan and Warden Jon P. Galley, by their attorneys, J. Joseph Curran, Jr., Attorney General of Maryland and Stephanie Lane-Weber, Assistant Attorney General, in support of this Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, file this Memorandum of Law and state as follows:

## I.   __Introduction__.

Plaintiff Derek Simms, an inmate presently housed at the Western Correctional Institution (WCI) has filed suit against Warden Jon Galley, former Commissioner of Corrections William Sondervan and two PHS employees, Dr. Isaias Tessema and Nurse Denise Van Meter.[1]  According to the Amended Complaint, the

---

[1]Defendants Galley and Sondervan were sued when court-appointed attorneys filed an Amended Complaint on behalf on Mr. Simms. From defense counsel's records, it appears that Warden Galley was served on or about October 9, 2003 and (continued...)

gravamen of Mr. Simms complaint is that he has received grossly inadequate medical care, insufficient medication for pain for Crohn's disease and he was not medically prescribed a single cell. It is embarrassing for Mr. Simms to take necessary sitz baths in his cell when he has a cellmate and the hot water in his cell for the sitz baths is purportedly not hot. Mr. Simms seeks damages, attorney's fees and costs against Warden Galley and the Medical Defendants and injunctive relief against all defendants.

## II.    **Factual Background**.

Defendant Jon Galley is the Warden of Western Correctional Institution, Exhibit 1, Deposition of Warden Galley at 5, which houses about 1, 912 inmates. Exhibit 1 at 29. He is a highly educated person with a college degree and two masters degree in administration of justice and counseling. Exhibit 1 at 6. As warden, he is responsible for the overall operation of the institution. Exhibit 1 at 9.

At WCI, inmates receive medical care through PHS, a private medical contractor. Exhibit 1 at 14, 27, 64. That private contractor's medical services are monitored through the chief medical officer of the Division of Correction, Dr. Baucom, and the director of medical services, Walter Wirshing. Exhibit 1 at 15. Dr. Tessema, the PHS medical director, does not report on clinical matters to Warden Galley. Exhibit 1 at 27. Dr. Baucom has a supervisory relationship with Dr.

[1](...continued)
former Commissioner Sondervan's pleading was received by counsel on October 2, 2003.

Tessema. Exhibit 1 at 27. Warden Galley is responsible for ensuring that the medical program operates within the organizational structure of WCI. Exhibit 1 at 21. Security, transportation, and scheduling fall within the warden's purview. Exhibit 1 at 21.

Warden Galley does not intercede in making medical judgments of a clinical nature. Exhibit 1 at 23. Deferring to the medical direction on medical issues, Warden Galley does not override the medical director as to treatment or medication prescriptions because Warden Galley is not a doctor. Exhibit 1 at 24-25. Moreover, Warden Galley has no authority to override one physician's prescription of medication over another physician's recommendation for medication because he cannot make a judgment about proper medical care. Exhibit 1 at 25-26. He also does not review sick call requests. Exhibit 1 at 33.

Warden Galley attends case conferences about individual inmate's medical needs. Exhibit 1 at 34. At the conferences, the clinicians describe the medical management of specific care. Exhibit 1 at 34. Warden Galley does not know Mr. Simms personally. Exhibit 1 at 39.

Warden Galley acknowledges that Crohn's disease is a potentially serious condition and can be painful. Exhibit 1 at 66-67. Warden Galley has Crohn's disease although he is not familiar with perianal Crohn's disease. Exhibit 1 at 67.

Not counting the inmates in the infirmary, about 25 inmates housed at WCI live in a single cell due to medical reasons. Exhibit 1 at 31. Mr. Simms is housed in

a single cell because his housing unit manager, Lieutenant Shreeve, decided to utilize a single cell for Mr. Simms and there happened to be an available single cell. Exhibit 1 at 31, 68. Mr. Simms takes sitz baths and it is less convenient to do so with a cell partner.[2] There is no medical order that Plaintiff receive a single cell. Exhibit 1 at 31. He has had a single cell since September 3, 2001. Exhibit 2, Galley's Answers to Interrogatories, Answer to Interrogatory No. 10. Similarly, no medical order has been produced to show that a sitz bath must be any certain temperature.

Mr. Simms is a prolific complainer and has filed many, many ARPs. Exhibit 1 at 39. In fact, Mr. Simms from February 1, 1998 to December 17, 2003, Plaintiff filed 93 ARPs. Exhibit 3, Galley's Answers to Interrogatories, Answer No. 3.

William Sondervan was commissioner of the Division of Correction from January, 1999 to September, 2003. Exhibit 2, Deposition of William Sondervan, Exhibit 2 at 7. The medical contractor is supervised by the office of the Secretary of Public Safety and Correctional Services, bypassing the commissioner in the chain of command. Exhibit 2 at 13-14. Commissioner Sondervan explicated in his deposition:

A.[3]    From an chain of command perspective, they [PHS, the medical contractor] did not work for the commissioner of corrections; they

---

[2]Frequently, a medical director at one facility will recommend a single cell for an inmate but when the inmate is transferred to another prison, that facility's medical director will not also recommend a single cell. Exhibit 1 at 90.

[3]"A" designates William Sondervan, "Q" designates Plaintiff's attorney.

worked for the Department of Public Safety and Correctional Services.

To say I had no responsibility for it is not true. I mean we, had a staff relationship responsibility. If something went on in our institutions that needed attention, then we would make sure that they got that kind of attention. But it terms of the strict accountability and who they report to, lines of command and control, they did not report to us.

Q       If there were an instance where a medical staff, a contract employee through one of these – for instance, Prison Health Services I know has this contract with Western Correctional Institute or with the State for Western Correctional Institute.

If there was a problem with one of the employees that warranted someone being fired – and again, we can give examples or discuss examples – who then would be ultimately responsible for addressing that employee's violation, whether it be security or –

A       Well, the way that that works is the warden is responsible for the institution and the commissioner's responsible for all the institutions. We're responsible for people coming in and out for security, good order discipline and that sort of thing.

If a medical contractor came into one of the institutions and that person had drugs on them or if they did something inappropriate or something wrong, then it would be our responsibility to report that up to the chain of command to the people who are responsible for the medical contract.

You know, what we would do is if something happened where a medical provider was caught bringing drugs in or having improper relations with an inmate or something like that, or bringing any other kind of contraband into the institution, I have the authority to bar them from coming into the institution. But in terms of terminating them, that went back to the contract monitor and ultimately to the contractor to discipline him or to terminate him.

5

Q    So what authority then, if any, would you as commissioner have over a doctor or a nurse who in their medical capacity didn't do something that you deemed not up to snuff?

A    <u>It was not my responsibility nor the warden's responsibility to – because we're not medical doctors – to determine what is appropriate medical care or treatment. We have to rely upon the doctors to do that, the medical staff to do that.</u>

Q    So is there essentially no check in place for a doctor who, again in the hypothetical, improperly treated an inmate or did something medically that was improper?

A    Well, yes. There's checks, but not with us. That would go up through the contractor to the contractor and through that chain of command, the contract monitor's chain of command. That's how that would work. Exhibit 2 at 13-14. (emphasis added)

Former Commissioner Sondervan had no communication with Mr. Simms, to his knowledge. Exhibit 2 at 19. Like Warden Galley, he did not deny Mr. Simms any medical treatment, pain medication, hot water or a single cell. Exhibit 3A, Sondervan's Answers to Interrogatories, Answers 23 and 24.

If an inmate has a complaint, he may file a grievance under the Administrative Remedy Procedure (ARP). Exhibit 2 at 23-24. At the first level, the inmate directs his complaint to the facility. After review and investigation, the warden generally responds to the complaint. Exhibit 2 at 24. If dissatisfied with the response, the inmate may file an appeal to the commissioner's office, where it is further evaluated, and, if necessary, further investigated. Exhibit 2 at 25. If the commissioner's response to the inmate was not satisfactory. he may appeal to the Inmate Grievance Office. Exhibit 2 at 25. And, if the Inmate Grievance Office does not provide a

6

response to the inmate, he may file an appeal to the appropriate state circuit court. Exhibit 2 at 26.

The Director of the Maryland Inmate Grievance Commission is Marvin M. Robbins. Exhibit 4, Declaration of Marvin N. Robbins. He has been the Executive Director since June 1, 1979. The IGO receives about 2,000 to 2,5000 grievances a year. Exhibit 4 at para. 1. The IGO falls under the auspices of the Secretary of the Department of Public Safety and Correctional Services. Exhibit 4 at para. 2. The jurisdiction of the IGO is limited to complaints filed by inmates in the custody of the Division of Correction and Patuxent Institution against officials or employees of the Division of Correction or Patuxent Institution. Exhibit 4 at para. 3.

As the Executive Director, Mr. Robbins' responsibilities include, but are not limited to, reviewing all inmate IGO complaints and ensuring that they have been properly filed with my office. Mr. Robbins and his designees have the authority to administratively dismiss complaints that are wholly without merit on their face, are not within our jurisdiction, are untimely filed, or for which the inmate has failed to exhaust administrative remedies prior to seeking the IGO's jurisdiction. Exhibit 4 at para. 4.

Except for complaints which involve disciplinary decisions or classification decisions (such as security level assignments, institutional assignments, or job assignments), inmates who are in the custody of the Division of Correction must

7

exhaust the remedies available to them through the Division of Correction's Administrative Remedy Procedure (ARP) prior to seeking the IGO's jurisdiction. Exhibit 4 at para. 5.

Issues for which inmates may seek relief through the Division of Correction's ARP procedure include, but are not limited to: a) institutional policies and/or procedures; b)access to courts; c) medical services (although the Division of Correction may exercise a role in addressing certain medical complaints, the IGO does not have jurisdiction of complaints against the private health-care contractor or its employees who provide medical services to State prisoners); d) religious liberties; e) lost, stolen or damaged property; f) use of force; g) sentence calculations; h) institutional conditions; and i) and other complaints against staff. Exhibit 4 at para. 6.

When an IGO complaint is filed, a preliminary review of the complaint is made to determine if the complaint is wholly lacking in merit on its face, or not.  If the grievance is determined to be wholly lacking in merit on its face, it is dismissed.  This order of dismissal constitutes the final decision of the Secretary for purposes of judicial review. If the the grievance is not wholly lacking in merit on its face, it will be referred to the Office of Administrative Hearings (OAH).  The OAH conducts hearings on grievances and provides the inmate with a chance to produce evidence and witnesses.  See Annotated Code of Maryland, Correctional Services Article, section 10-208.  The OAH issues decisions in the form of an order. If, after the

8

hearing, the ALJ determines that the grievance is without merit, a final order is issued to that effect from which a Petition for Judicial Review may be filed in circuit court. If, on the other hand, the ALJ determines that the grievance is at least in part meritorious, the ALJ prepares a proposed meritorious order to be reviewed by the Secretary of the Department of Public Safety and Correctional Services. The Secretary may affirm, reverse or modify the proposed order. Whatever action is taken by the Secretary is considered to be the final decision from which a Petition for Judicial Review may be filed in the circuit court. Exhibit 4 at paras. 8-9.

Mr. Robbins had a search conducted of the IGO computerized case-tracking system to be conducted. Since 1999 the IGO has received sixteen (16) grievances from Mr. Simms. Of the 16 grievances filed, 14 were administratively dismissed without a hearing. Of the 14 cases that were dismissed, 7 involved medical issues which were in some way related to medical treatment for his anal/rectal problems. The 7 medical grievances are identified as IGO Nos. 20040490, 20020677, 20040556, 20040481, 20040480, 20040478 and 20040479. The grievances and their dismissals are attached as Exhibits 4 A-G. The other 7 cases involved allegations about adjustment issues, threats by other inmates, access to educational programs, tampering with his food, and denial of treatment for sexual offenders. Of all the cases administratively dismissed, there is no record of Mr. Simms having petitioned the circuit court for judicial review. The remaining 2 cases which were the ones that were not administratively dismissed involve complaints not related to

9

medical issues and pertained to Mr. Simms' typewriter and an opportunity to review his basefile. Exhibit 4 at para10.

**III.    Argument**.

    **A.    Civil Rights Claim: No Denial of Medical Care**

In order to state a constitutional claim under the Eighth Amendment for lack of proper medical care, a prisoner must meet a three-fold test.  First, the actions or inactions of prison authorities must correspond to a "deliberate indifference" standard.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Secondly, that deliberate indifference must be directed "to [a] serious medical need [ ]".  Id.  Additionally, there must be some personal involvement on the part of prison officials. *West v. Atkins*, 815 F.2d 993 (4th Cir. 1987), *rev'd*. on other grounds, 487 U.S. 42, 106 S.Ct. 2250 (1988).  Mr. Simms' claims fail because there had been no deliberate indifference and Warden Galley and Commissioner Sondervan are allowed to rely upon the medical health care contractor to provide appropriate medical care.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the Court of Appeals reviewed the standard to be applied when considering an inmate's claim that he was subjected to cruel and unusual punishment as a result of deliberate indifference by prison personnel to an inmate's serious illness or injury.  The Court analyzed both the responsibility of medical personnel as well as that of supervisory Defendant.  In reviewing that standard the Court noted:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to *shock the conscience or to be intolerable to fundamental fairness* . . . . Deliberate indifference may be demonstrated by either actual intent or reckless disregard . . . . A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. (citations omitted.) (emphasis added).

*Id.*, p.851-52. Thus, in order to state a cause of action for lack of adequate medical care, plaintiff must allege conduct that "shock[s] the conscience or [is] intolerable to fundamental fairness." *Id.*

Mere "[q]uestions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). *See also Donlan v. Smith*, 662 F.Supp. 352, 361 (D.Md. 1986) ("A claim based on medical malpractice or mere negligence may not be brought under Section 1983."). Mr. Simms received considerable medical care and attention from PHS. His medical care has been the subject of individualized care and discussion. Indeed, according to the report of Dr. Michael L. Weinstein,

> "Mr. Simms' condition and complaints have not been ignored at any time during his incarceration. A gastroenterologist evaluated him with extensive testing in 1998 and 1999. The medical staff generally followed the recommendations made although patient compliance with advice was not necessarily ideal. The recommendations of specialists made more recently appear to have resulted in some improvements based on notes from the last several months. On the other hand, Mr.

11

> Simms might be benefitting from a spontaneous improvement of Crohn's Disease. There are no recent documented complaints or findings presently that suggest the need for a private cell or narcotic medication. Specialist follow-up every 3-4 months seems reasonable."

Exhibit 5, Expert Report of Michael L. Weinstein, M.D., at 2-3; Exhibit 6, Resume of Dr. Weinstein. *See also Miltier*, *supra*. It appears that Plaintiff merely takes issue with the choice of medical treatment adopted by his health care providers. Moreover, "claims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude." *Goff v. Bechtold*, 632 F.Supp. 697, 698 (S.D.W.Va. 1986). Here, the evidence reflects at most a disagreement between specialists as to how Mr. Simms' medical care should be provided. There is not a whit of evidence that Mr. Simms suffered any indifference, let alone deliberate indifference, to his medical condition.

Moreover, expert testimony that the defendant's medical care was grossly inadequate is not enough, in and of itself, to support an inference that a defendant not only should have perceived a risk but in fact did so, in a case where other facts and circumstances do not create such an inference. *Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999)(experts' affidavits as to what reasonable psychiatrist should have known did not create a jury question as to what the defendant actually did know).

Supervisory prison officials cannot be held liable merely for actions or failures to act on the part of the medical staff. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Carter v. Morris*, 164 F.3d 215, 220-21 (4th Cir. 1999); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988). Rather, supervisory officials can only be liable where it is shown they either failed to timely provide needed care, deliberately interfered with doctors' performance or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations. *Miltier v. Beorn*, 896 F.2d at 854-55 (4th Cir. 1990); *Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir. 1986). Prison officials are entitled to rely on the professional medical judgment of health care providers employed by the prison to care for inmates. *Miltier v. Beorn*, 896 F.2d at 854-55; *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002)(RN medical care administrator entitled to qualified immunity where relying on MD's finding certain treatment not required). *See also Olmstead v. L.C. by Zimring*, 523 U.S.581, 603 (1999)("[T]he State generally may rely on the reasonable assessments of its own professionals in determining whether an individual 'meets the essential eligibility requirements' for habilitation.") Because Warden Galley and Commissioner Sondervan did not impede the delivery of medical care, they are entitled to summary judgment.[4]

_____

[4]Former Commissioner Sondervan should be released from suit because Mr. Simms seeks injunctive relief against him and no such injunctive relief should be available against Commissioner Sondervan in that he is no longer employed by the Maryland Division of Correction.  Therefore, that quest is moot.  *Williams v. Griffin*, (continued...)

### B.    Statute of Limitations

This Complaint has been filed in violation of the statute of limitations. Because there is no federal statute of limitations for §1983 actions, the State statute applies. *Burnett v. Grattan*, 468 U.S. 42 (1984); *Wilson v. Garcia*, 471 U.S. 261 (1985).  In Maryland, the General Assembly has established a three year statute of limitations. Md. Code Ann., Cts. & Jud. Pro. §5-101 (1989 Repl. Vol.).  The Amended Complaint does not clearly allege that dates of his alleged medical concerns but states that Mr. Simms has been housed at WCI since 1997.  See Amended Complaint at para. 12.  In so far as the allegations occur outside of a three year period as to Warden Galley and former Commissioner Sondervan, they should be dismissed as in violation of the statute of limitations.

### C.    Failure to Exhaust Administrative Remedies

Exhaustion of the administrative remedies is required under federal law before an action may be brought by a prisoner under § 1983. Pursuant to the Prison Litigation Reform Act of 1995, ("PLRA"), federal law expressly and unequivocally requires exhaustion, stating: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies as are

---

[4](...continued)
952 F.2d 820, 823 (4th Cir. 1991)(transfer to another facility mooted inmate's claims for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) (transfer mooted inmate's request for declaratory and injunctive relief)

available are exhausted." 42 U.S.C. § 1997e(a) (1996); *Chase v. Peay,* 286 F.

Supp.2d 253 (D. Md. 2003), aff'd *per curiam*, 2004 WL 1205695 (4th Cir. 2004).

To exhaust administrative remedies within the meaning of 42 U.S.C. §

1997e(a), the inmate must pursue his administrative remedies to the highest

available level. *See Maulick v. Central Classification Board*, 659 F. Supp. 24, 27

(E.D. Va. 1986). "An inmate who begins the grievance process but does not

complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust

his administrative remedies. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.

2001)." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Where the inmate

has  failed to utilize available administrative remedies at all or has failed to pursue

them to their conclusion, he has failed to exhaust administrative remedies and the

complaint should be dismissed. An inmate has also failed to exhaust available

administrative remedies with the meaning of the PLRA where he failed to cure a

technical default in his administrative complaint which he was thereafter time-barred

from pursuing further. Thus, an inmate "may not successfully argue that he had

exhausted his administrative remedies by, in essence, failing to employ them and

since he may now be time barred from pursuing them, they are exhausted by default.

This would trivialize the Supreme Court's holdings in *Booth* and *Porter* that

exhaustion is now mandatory." *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir.

2002). By this same reasoning, an altogether untimely ARP filing is no better that a

complete failure to exhaust administrative remedies, and should result in dismissal

of the complaint. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir.), *cert. denied*, 537 U.S. 949 (2002);  *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Wright v. Morris*, 11 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997); *Cline v. Fox*, 282 F. Supp. 2d 490 (D. W. Va. 2003).

It is now firmly settled that the PLRA's exhaustion requirement applies all types of prisoner complaints, and applies to claims for damages under § 1983 even if damages are not available under the State law administrative remedy. *Porter v. Nussle,* 534 U.S. 516 ( 2002); *Booth v. Churner*, 532 U.S. 731 (2001); *Taylor v. Barnett*, 105 F. Supp. 2d 483, 485 (E.D. Va. 2000)(noting Congress changed exhaustion requirement from effective remedy to available remedy); *Hall v. McCoy*, 89 F. Supp. 2d 742, 747 (W.D. Va. 2000)(PLRA's exhaustion requirement is jurisdictional, applies to excessive force claims, and applies even where damages are not available under administrative remedies).

_____Moreover, the inmate plaintiff must plead and show that he has exhausted his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998) (1997e requires allegation of exhaustion with "sufficient specificity"); *Chase, supra.* Failure to show that the inmate has exhausted his administrative remedies requires that his complaint be dismissed. *Chase,* 286 F. Supp. 2d at 258-259. Because Mr. Simms has not and cannot establish that he has exhausted hs administrative remedies, the case must be dismissed.

D.    **Qualified Immunity**

Defendant Warden Galley asserts that he is entitled to summary judgment on the basis of qualified immunity as to all claims.  The evidence has established that the Defendant has not violated any clearly established constitutional right of which a reasonable public official should have known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3044 (1987); *Turner v. Dammon*, 848 F.2d 440 (4th Cir. 1988); *Taratino v. Baker*, 825 F.2d 772 (4th Cir. 1987); *Young v. Lynch*, 846 F.2d 960 (4th Cir. 1988) (application to disciplinary committee members).  Qualified immunity "is intended to allow public officials to act, with independence and without fear of consequences, where their actions do not implicate clearly established rights." *Turner v. Dammon*, *supra*, at 443 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Under the standard articulated in *Harlow v. Fitzgerald*, *supra*, and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the question of whether a government or public official is entitled to summary judgment based on qualified immunity generally turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken'".  *Harlow v. Fitzgerald*, 457 U.S. at 818.  Qualified immunity thus protects public officials not only from liability, but from the vexations of trial. *See Mitchell v. Forsyth*, *supra*. at 526. The Fourth Circuit stated: "[o]fficials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which

17

a reasonable person would have known.'" *Turner v. Dammon*, *supra*, at 443 (quoting *Harlow v. Fitzgerald*, *supra*, at 818).  Given the status of the law as it relates to medical treatment, even if Plaintiff has stated a claim, Defendant's actions cannot be held to have violated "clearly established" legal rules.

### E.    Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986) (emphasis in original).  Moreover, the Supreme Court has explained that the Rule 56(c) standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a): ". . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, *supra*, 477 U.S. 242, 106 S.Ct. at 2511; *White v. Rockingham Radiologists, Ltd.*, 820

18

F.2d 98, 101 (4th Cir. 1987). *See also*, *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986).  Based upon this standard, the pleadings and exhibits, these Defendants are entitled to summary judgment.

**IV.**    **Conclusion.**

Defendants respectfully request this Court to dismiss the case or that summary judgment be entered in their favor.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

_____/s/_____
STEPHANIE LANE-WEBER
Assistant Attorney General
Trial Bar No. 00023

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6340 (Telephone)
(410) 576-6880 (Telefax)
Attorneys for Defendants

G:\LANEWEBS\WPDATA\SIMMS\Pleadings\Simmsmtdsj.wpd

19