Ex 2

1

1        IN THE UNITED STATES DISTRICT COURT FOR

2                THE DISTRICT OF MARYLAND

3                   (Northern Division)

4   DEREK L. SIMMS                    *

5     Plaintiff                       *

6   v.                                *   Civil Action No.:

7   ISAIAS TESSEMA, M.D., et al.,     *   02-CV-3276WMN

8     Defendants                      *

9                *    *    *    *    *

10           DEPOSITION OF WILLIAM SONDERVAN

11     The deposition of William Sondervan, taken in

12  the above-captioned case on Wednesday, May 12th,

13  2004, commencing at 2:00 p.m., in the Office of the

14  Attorney General, St. Paul Plaza, 19th Floor, 200

15  St. Paul Place, Baltimore, Maryland 21202, and was

16  reported by Dawn M. Hyde, a notary public.

17

18              EVANS REPORTING SERVICE

19          2 North Charles Street, Suite 950

20              Baltimore, Maryland 21201

21                   (410) 727 7100

EX 2

```
 1  APPEARANCES:
 2  HEATHER DEANS FOLEY, ESQ.
    COLLEEN M. MALLON, ESQ.
 3    Venable, LLP
      Two Hopkins Plaza, Suite 1800
 4    Baltimore, MD  21201
      On behalf of Plaintiff
 5
    STEPHANIE J. LANE-WEBER, ESQ.
 6    Office of the Attorney General
      200 St. Paul Place
 7    Baltimore, MD  21202
      On behalf of Defendant Warden Galley
 8
    DONALD J. CRAWFORD, ESQ. [via telephone]
 9    Adelman, Sheff & Smith, LLC
      200-A Monroe Street
10    Rockville, MD  20850
      On behalf of Defendants Dr. Tessema and Nurse
11    VanMeter
12  ALSO PRESENT:
13  Phil Pickus, Esq. (Assistant Attorney General)
14
15
16
17
18
19
20
21
```

1  contract monitors bypassed the warden, bypassed the

2  commissioner and went directly to the secretary's

3  office.

4      Q    And again, I apologize, is that the

5  Secretary of State or is that --

6      A    No, Secretary of Public Safety and

7  Correctional Services.

8      Q    Thank you.  And again, I just want to make

9  sure I understand your answer, and I appreciate the

10 explanation.

11          So is it your opinion or your position

12 that you don't have any responsibility or any

13 authority over medical personnel at the individual

14 institutions?

15     A    From a chain of command perspective, they

16 did not work for the commissioner of corrections;

17 they worked for the Department of Public Safety and

18 Correctional Services.

19          To say I had no responsibility for it is

20 not true.  I mean we, had a staff relationship

21 responsibility.  If something went on in our

1  institutions that needed attention, then we would

2  make sure that they got that kind of attention.  But

3  in terms of the strict accountability and who they

4  report to, lines of command and control, they did

5  not report to us.

6      Q    If there were an instance where a medical

7  staff, a contract employee through one of these --

8  for instance, Prison Health Services I know has this

9  contract with Western Correctional Institute or with

10 the State for Western Correctional Institute.

11          If there was a problem with one of the

12 employees that warranted someone being fired -- and

13 again, we can give examples or discuss examples --

14 who then would be ultimately responsible for

15 addressing that employee's violation, whether it be

16 security or --

17     A    Well, the way that that works is the

18 warden is responsible for the institution and the

19 commissioner's responsible for all the institutions.

20 We're responsible for people coming in and out for

21 security, good order discipline and that sort of

16

1   thing.

2           If a medical contractor came into one of

3   the institutions and that person had drugs on them

4   or if they did something inappropriate or something

5   wrong, then it would be our responsibility to report

6   that up to the chain of command to the people who

7   are responsible for the medical contract.

8           You know, what we would do is if something

9   happened where a medical provider was caught

10  bringing drugs in or having improper relations with

11  an inmate or something like that, or bringing any

12  other kind of contraband into the institution, I

13  have the authority to bar them from coming into the

14  institution.  But in terms of terminating them, that

15  went back to the contract monitor and ultimately to

16  the contractor to discipline him or to terminate

17  him.

18      Q   So what authority then, if any, would you

19  as commissioner have over a doctor or a nurse who in

20  their medical capacity didn't do something that you

21  deemed not up to snuff?

1   A   It was not my responsibility nor the

2   warden's responsibility to -- because we're not

3   medical doctors -- to determine what is appropriate

4   medical care or treatment. We have to rely upon the

5   doctors to do that, the medical staff to do that.

6   Q   So is there essentially no check in place

7   for a doctor who, again in the hypothetical,

8   improperly treated an inmate or did something

9   medically that was improper?

10  A   Well, yes. There's checks, but not with

11  us. That would go up through the contractor to the

12  contractor and through that chain of command, the

13  contract monitor's chain of command. That's how

14  that would work.

15  Q   Is there anyone -- would anyone within

16  your department be notified or is there simply no

17  involvement in that at all?

18          MS. LANE-WEBER: Notified of what?

19  BY MS. FOLEY:

20  Q   If there was some problem that you became

21  aware of, if a warden -- would any type of notice be

19

```
 1  in terms of their professional practice and care

 2  that they give and that sort of thing, that goes to

 3  the other chain.

 4       Q    Are you familiar with Derek Simms, other

 5  than obviously the filing of this lawsuit?  Were you

 6  familiar with Mr. Simms prior to that time?

 7       A    No, I wasn't.

 8       Q    Have you ever had, to your recollection,

 9  any communications, either a verbal communication

10  directly with somebody regarding Mr. Simms?

11       A    I have not, not to my knowledge.

12       Q    And if I say -- again, based upon, I'm

13  assuming, your reading of the complaint or the

14  documents in this litigation, Mr. Simms has Crohn's

15  disease.

16            Are you aware that he has made several

17  sick call requests and administrative remedy

18  procedures related to some of those sick call

19  requests related to his Crohn's disease?

20       A    I wasn't aware of it prior to this.

21       Q    So prior to the lawsuit, you weren't aware
```

23

1  Sometimes it would be in writing, sometimes it

2  wouldn't be. But for the most part, if the medical

3  person recommends something, that's what would be

4  done.

5       Q    Does the warden have authority on his or

6  her own to do that at one of the institutions, to

7  institute a single-cell status for an inmate?

8       A    Yes.

9       Q    And for what reason would that be?

10      A    Well, the warden, by law and for practical

11 reasons, the warden is the managing officer who is

12 in charge of that particular institution. Wardens

13 are asked and given the authority to exercise their

14 judgment on the day-to-day operation of their

15 institution.

16      Q    And would it be the same types of reasons

17 that you articulated earlier? I mean,

18 considerations that would come into play, the

19 capacity and security and things of that nature?

20      A    Yes.

21      Q    I referred earlier to the administrative

24

1  remedy procedures, or ARP. If I refer to them as

2  "ARP," will you understand what I'm referring to?

3      A    Sure, yes.

4      Q    Can you again generally explain to me the

5  process that's in place related to those procedures.

6      A    Sure. An inmate who has a grievance or

7  feels that -- he's not getting something he should

8  have or something is wrong or whatever the reason

9  is, they have a way to express that and they do it

10 through the ARP process, you know.

11           They will write up an ARP and lay out

12 their grievance. The grievance would normally go to

13 an ARP coordinator in that particular institution.

14 Then it would be researched and evaluated and it

15 normally goes to a warden for decision.

16           And then it would go back to the inmate

17 saying they found it favorable, they found it

18 unfavorable, they found it partially favorable,

19 whatever the case may be, and address the issue.

20           If in fact the inmate does not like the

21 answer that he or she received, then they could

1  appeal that to the commissioner's office.  And when

2  it comes to the commissioner's office where it would

3  be further evaluated and additional research if

4  necessary, then a decision would be made.

5          Now, those decisions were normally made --

6  because I had 24,000 inmates at 27 prisons, what we

7  normally would do is I would delegate that for the

8  most part to the regional commissioners to review

9  that.

10         Sometimes I did it myself.  They would

11 take a look at the inmate's complaint, they would

12 look at the investigation and all the things that

13 were uncovered and make a reasonable decision based

14 on policy and on what's fair and reasonable.  And

15 then that would go back to the inmate.

16         And if the inmate at that point still was

17 unhappy with the decision, they could appeal it to

18 the inmate grievance office.  The inmate grievance

19 office then in turn goes through the same kind of

20 process where they would look at the complaint, they

21 would look at the warden's response, the

```
 1   commissioner's response and they would make a

 2   determination.

 3           And if the inmate -- then I think that was

 4   the last thing.  After they went through all that,

 5   then I think they can take it to the Circuit Court.

 6   And I believe that's how the process works.

 7       Q   So what I've understood you to just

 8   describe is kind of a three-step or three-tiered

 9   process where the warden at the institution level,

10   the commissioner as an appeal, and then the

11   grievance?

12       A   Right.

13       Q   The inmate grievance office or committee,

14   commission as an appeal above the commissioner?

15       A   Yes.

16       Q   Is there any way to kind of bypass or

17   forgo the process?  For instance, does an inmate

18   ever file a complaint directly to the commissioner

19   and bypass the warden?

20       A   Well, we don't allow that.  We have a

21   chain of command.  When you have 27 prisons and
```