IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

DEREK L. SIMMS,                          *

          Plaintiff,                     *

          v.                              *      Civil Action No.: 1:02-cv-3276WMN

ISAIAS TESSEMA, M.D., et al.,            *      **ORAL ARGUMENT REQUESTED**

          Defendants.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEREK L. SIMMS'S MEMORANDUM IN OPPOSITION TO (1) MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS TESSEMA AND VANMETER AND (2)
MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS GALLEY AND SONDERVAN**

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT……………………………………………………1

        A. Overview of the Claims………………………………………………............3

        B. The Posture of The Defendants' Motions……………………………………...3

                1. The Medical Defendants' Motion for Summary Judgment…………………3

                2. The Correctional Defendants' Motion to Dismiss, or
                in the Alternative, Motion for Summary Judgment…………………………4

II.     STATEMENT OF FACTS………………………………………………………5

        A. The Medical Treatment Mr. Simms Received from 1997 through 2000…………..6

        B. The Inadequate Medical Treatment Mr. Simms Received Beginning In
           December 2000…………………………………………………………………...7

        C. Withholding of Pain Medication………………………………………............10

        D. Mr. Simms's Inability to Comply With the Prescribed Sitz Bath Treatment………..15

        E. Exhaustion Of Administrative Remedies……………………………………16

III.    ARGUMENT……………………………………………………………………...17

        A. Summary Judgment Standard……………………………………………………17

        B. Deliberate Indifference Standard………………………………………………18

                1. Mr. Simms's Deliberate Indifference Claim Against The Defendants………18

                a.  The Medical Defendants……………………………………………19

                        (i) Inadequate Medical Care Beginning in December 2000……………19

                        (ii) Withholding of pain medication………………………………....22

                        (iii) Mr. Simms's demonstrated inability to comply with
                              the prescribed sitz bath treatment…………………………………23

                b.  The Correctional Defendants……………………………………………..25

BA2DOCS1/246993v1

2. Mr. Simms Has Exhausted the Administrative Remedies
   Available at WCI……………………………………………………...28

a. The Medical Defendants…………………………………………………...28

b. The Correctional Defendants……………………………………………29

3. The Amended Complaint is not Barred by the Applicable
   Statute of Limitations………………………………………………………30

4. Defendant Galley is Not Entitled to Qualified Immunity……………………31

5. This Court Does Have Subject Matter Jurisdiction
   Over Mr. Simms's Deliberate Indifference Claim……………………………31

6. The Current Commissioner Should be Substituted
   for Defendant Sondervan……………………………………………………..32

IV.    CONCLUSION…………………………………………………………………33

BA2DOCS1/246993v1

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................................................17

Casanova v. Dubois, 304 F.3d 75 (1st Cir. 2002)..............................................................28

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......................................................... 17-18

Chase v. Peay, 286 F. Supp. 2d 523 (D. Md. 2003) ..........................................................28

Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987) ..................................................................22

Estelle v. Gamble, 429 U.S. 97 (1976) .......................................................................18, 31

Farmer v. Brennan, 511 U.S. 825 (1994) ..........................................................................18

Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir.1987)........................................17

Fowler v. Hodge, M.D., No. 03-7008, 2004 WL 618070 (10th Cir. March 30, 2004)....................................................................................................................... 19-20

Gordon v. Kidd, 971 F.2d 1087 (4th Cir.1992) .................................................................31

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ......................................................................31

Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994) ...................................................... 20-21

Jones v. Simek, 193 F.3d 485 (7th Cir. 1999) .............................................................20, 23

Kentucky v. Graham, 473 U.S. 159 (1985) .......................................................................33

Liebig v. Kelley-Allee, 923 F. Supp. 778 (E.D.N.C. 1996) .................................................4

McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999) ........................................................22

Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990) ...........................................................18, 25

Rodriguez v. McGinnis, No. 98-CV-6031CJS, 2004 WL 1145911 (W.D.N.Y. May 18, 2004) .................................................................................................27

Talbot v. U.S. Foodservice, Inc., 191 F. Supp. 2d 637 (D. Md. 2002)................................5

Taylor v. Waters, 81 F.3d 429 (4th Cir.1996) ...................................................................31

TFWS v. Schaefer, 325 F.3d 234 (4th Cir. 2003)................................................................4

United States v. Barile, 286 F.3d 749 (4th Cir. 2002)........................................19

West v. Keve, 571 F.2d 158 (3d Cir. 1978).........................................................23

Wilson v. Garcia, 471 U.S. 261 (1985) ..............................................................30

Woods v. Lecureux, 110 F.3d 1215 (6th Cir. 1997)............................................19

## Other Authorities

Cts. & Jud. Proc. § 5-101 ....................................................................................30

Prison Litigation Reform Act of 1996 ("PLRA"), § 1997e(a)...........................28

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| DEREK L. SIMMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:02-cv-3276WMN |
| ISAIAS TESSEMA, M.D., et al., | * | **ORAL ARGUMENT REQUESTED** |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEREK L. SIMMS'S MEMORANDUM IN OPPOSITION TO (1) MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS TESSEMA AND VANMETER AND (2)
MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS GALLEY AND SONDERVAN**

Plaintiff Derek L. Simms, by his undersigned counsel, hereby files this Memorandum
in Opposition to (1) the Motion for Summary Judgment filed by Defendants Isaias Tessema
and Denise VanMeter (the "Medical Defendants") and to (2) the Motion to Dismiss, or in the
Alternative, Motion for Summary Judgment filed by Defendants Jon Galley and William
Sondervan (the "Correctional Defendants," and together with the Medical Defendants
"Defendants").[1]  For the reasons set forth below, the Defendants' Motions should be denied.

## I. PRELIMINARY STATEMENT

Mr. Simms's constitutional rights have been, and continue to be, trampled upon by the
Defendants.  Mr. Simms has severe perianal Crohn's disease.[2]  His condition is extremely
painful.  The Defendants are aware of Mr. Simms's disease and his pain, yet the Defendants

---

[1]      The Medical Defendants' Motion for Summary Judgment and the Correctional Defendants' Motion to
Dismiss, or in the Alternative, Motion for Summary Judgment are collectively referred to herein as the
"Motions."  Additionally, citation pages in their accompanying memoranda of law are referred as "Medical
Defendants' Mem." and "Correctional Defendants' Mem."

[2]      "Crohn's disease" and "perianal Crohn's disease" are used interchangeably.

have failed (i) to provide Mr. Simms with adequate medical care, (ii) to direct that adequate medical care be provided to Mr. Simms, and/or (iii) to allow Mr. Simms to obtain adequate medical care within a reasonable time in connection with his Crohn's disease and pain. The purpose of this lawsuit is to hold the Defendants accountable for their deliberate indifference to Mr. Simms's serious medical needs, and to ensure that Mr. Simms receives from the Defendants the medical care that he is entitled to under the United States Constitution.

This Court is intimately familiar with the facts of this case. On April 29, 2003, this Court concluded that summary judgment on several of Mr. Simms's claims was not appropriate. See Memorandum at 8 (Ex. 20, April 29, 2003 Memorandum ("Memorandum")). In particular, this Court concluded that there were triable issues of disputed fact as to whether Mr. Simms (i) is able to comply with the treatment prescribed for his Crohn's disease (i.e., sitz baths) and the extent of [the Medical] Defendants' knowledge with respect to that ability and (ii) whether or not [the Medical] Defendants' withholding of pain medication from Mr. Simms for his Crohn's disease is so grossly incompetent or inadequate that it shocks the conscience and constitutes the willful infliction of pain. These issues remain in dispute.

With the passage of time and the benefit of discovery, Mr. Simms has unearthed additional facts that support his claim. The Defendants want to effectively strip Mr. Simms of his day in court, because according to them there are no genuine issues of material fact in dispute. The Defendants are wrong. The Defendants simply present a one-sided portrayal of the facts of this case. Indeed, there are numerous facts in dispute and these facts, as set forth

below, contradict the Defendants' version, thereby making summary judgment wholly inappropriate in this case.[3]

In sum, for the reasons set forth below, the Defendants' Motions should be denied and this case should proceed to a bench trial before this Court.

### A.  Overview of the Claims

The Medical Defendants and Defendant Galley, all of whom are sued in their individual and official capacities, violated Mr. Simms's constitutional rights under the Eighth Amendment to the United States Constitution in one or more of the following ways:

(1) providing treatment for Mr. Simms's Crohn's disease that is so grossly incompetent and/or inadequate so as to shock the general conscience or to be intolerable to fundamental fairness;

(2) prescribing medical treatment for Mr. Simms's Crohn's disease with knowledge that Mr. Simms is unable to comply with the prescribed treatment; and

(3) by failing to prescribe pain medication for Mr. Simms's pain caused by his Crohn's disease

For these violations, Mr. Simms seeks damages, costs, attorneys' fees, and such other relief as the Court deems appropriate in the circumstances.  Mr. Simms also seeks injunctive relief against the Defendants because Mr. Simms will suffer irreparable harm unless an injunction, requiring that Mr. Simms be provided with adequate medical treatment for his Crohn's disease, including but not limited to, a medical prescription for a single cell, pain medication, hot water, and a properly sized sitz bath, is granted.

### B.  The Posture of The Defendants' Motions

### 1.    The Medical Defendants' Motion for Summary Judgment

In their second bite at the apple, the Medical Defendants have moved for summary judgment on all counts against them.  They ostensibly claim that there are no genuine issues

---

[3]        It bears mentioning that none of the Defendants deposed Mr. Simms in this case.

of material fact in dispute.  As will be demonstrated below, they are wrong.  The Medical

Defendants seem to be confused about the applicable legal standard—that is, they claim that

"[s]ince this is a non-jury trial and discovery has been completed, this matter is ready for

resolution."  Medical Defendants' Mem. at 21.  Simply because discovery has been

completed and because this case will be heard by this Court in a bench trial does not mean

that this Court can resolve disputed factual issues at this juncture.  See TFWS v. Schaefer,

325 F.3d 234, 241 (4th Cir. 2003) ("The fact that both parties simultaneously are arguing that

there is no genuine issue of fact does not establish that a trial is unnecessary thereby

empowering the court to enter judgment as it sees fit.  In other words, a district court may not

resolve conflicts in the evidence on summary judgment motions.") (internal citations and

quotation marks omitted).  Here, Mr. Simms has not filed a summary judgment motion

because there are clearly conflicts in the evidence that this Court at some time in the near

future will be called upon to decide.  That time, however, is not now.

2.    **The Correctional Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment**

      The Correctional Defendants have filed a Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment.  At this juncture in the proceedings, however, a motion to

dismiss is not proper.  On October 29, 2003, the Correctional Defendants filed an Answer to

the Amended Complaint.  Additionally, they attach fourteen (14) exhibits to their present

Motion, upon which they heavily rely.  Placed in this context, the case law makes clear that

the Correctional Defendants' Motion should not be recognized as a motion to dismiss, rather

it should be treated like a summary judgment motion.  See Liebig v. Kelley-Allee, 923 F.

Supp. 778, 780 (E.D.N.C. 1996) (citing Fed. R. Civ. P. 12(b), which provides:  "A motion

making any of these [12(b)] defenses *shall* be made before pleading if a further pleading is

permitted"; "[i]t is elementary that a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be filed contemporaneously with or before the Answer or other responsive pleading.") (emphasis added); Talbot v. U.S. Foodservice, Inc., 191 F. Supp. 2d 637, 639 (D. Md. 2002) (citing Fed. R. Civ. P. 12(b) and explaining that, when a court considers matters outside the pleadings, a motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56...."). Accordingly, the relevant legal standard applicable to the Correctional Defendants' Motion is summary judgment.

## II.  STATEMENT OF FACTS

It is undisputed that Mr. Simms has severe perianal Crohn's disease, (Ex. 1, Expert Report of Linda Lee, M.D. at 1 ("Lee Report")); (Ex. 2, Expert Report of Michael Weinstein, M.D. at 2 ("Weinstein Report")), which has caused him variable severity for over 20 years, (Ex. 2, Weinstein Report at 2).[4]  Crohn's disease is a chronic inflammatory disorder that affects the gastrointestinal tract.  (Ex. 1, Lee Report at 1).  There are many manifestations of Crohn's disease, one of which is perianal Crohn's disease.  Id.  Perianal Crohn's disease can present itself in one of two ways:  (i) a benign presentation, in the form of anal skin tags, anal fissures or hemorrhoids, or (ii) a severe presentation with perirectal abscesses and fistula tracts.  Id.  There is no known cure for Crohn's disease, but medical and surgical therapy exists which has been successfully used to manage the symptoms and complications associated with Crohn's disease.  Id.

---

[4]     Previously, this Court observed that, "it is clear from the evidence that Plaintiff is engaged in a protracted, battle against a chronic disease for which there is no known cure."  Ex. 20, Memorandum at 5.

Mr. Simms began his period of incarceration at Western Correctional Institution ("WCI") in late 1997. (Ex. 3, Declaration of Derek L. Simms at ¶ 3 ("Simms Decl.")).[5] With the exception of a short stay at the Maryland House of Correction Annex (which in turn transferred Mr. Simms to Patuxent Institution for several days) in the beginning of 2000, the treatment of Mr. Simms's Crohn's disease has been under the care of the medical staff at WCI since late 1997. (Ex. 3, Simms Decl. at ¶ 4). Defendant Tessema became the medical director at WCI in December 2000. (Ex. 4, Deposition of Isaias Tessema at 25 ("Tessema Dep.")).[6] The medical care and treatment that Mr. Simms received for his Crohn's disease and related pain changed drastically when Defendant Tessema became the medical director at WCI in December 2000. (Ex. 3., Simms Decl. at ¶ 5).

A.    **The Medical Treatment Mr. Simms Received from 1997 through 2000**

The Defendants do not dispute that from late 1997 through the beginning of 2000, the medical director at WCI referred Mr. Simms off-site at least nine (9) times so that his Crohn's disease could be evaluated by specialists, i.e., surgeons and/or gastroenterologists. (Ex. 3, Simms Decl. at ¶ 6; Ex. 5, Progress Notes of Jeffrey Briggs, M.D.; Ex. 21, Off-Site Consultations). These specialists examined Mr. Simms and performed various medical tests to determine the course of treatment for his Crohn's disease. Id. The dates on which such off-site referrals and corresponding examinations took place are as follows:

---

[5]    Attached hereto as Exhibit 3 is an unexecuted Declaration of Mr. Simms. Because of the considerable distance to WCI and the numerous steps that must be taken before Mr. Simms can execute and return the document, counsel was not able to obtain a fully executed document prior to the filing deadline. Counsel has, however, read the Declaration to Mr. Simms over the telephone to ensure its accuracy and has forwarded a copy to Mr. Simms via U.S. mail for execution. Upon receipt of the fully executed Declaration, counsel will supplement its opposition to the Defendants' Motions by filing a fully executed copy of the Declaration with the Court and forwarding the same to all parties.

[6]    A copy of Defendant Tessema's curriculum vitae is attached hereto. (Ex. 7, Plaintiff's Deposition Exhibit 10).

1.   On or about March 16, 1998, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 6, Deposition of Linda Lee, M.D. at 19 ("Lee Dep.")).

2.   On or about July 17, 1998, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 6, Lee Dep. at 21).

3.   On or about June 11, 1998, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 6, Lee Dep. at 22).

4.   On or about June 17, 1999, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 6, Lee Dep. at 25).

5.   On or about August 9, 1999, Mr. Simms was referred off-site to and examined at the University of Maryland Medical System.  (Ex. 6, Lee Dep. at 26).

6.   On or about October 19, 1999, Mr. Simms was referred off-site and examined at University of Maryland Medical System.  (Ex. 6, Lee Dep. at 26).

7.   In November 1999, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 5, Progress Notes of Jeffrey Brigg, M.D. at 1).

8.   In December 1999, Mr. Simms was referred off-site to and examined at Sacred Heart Hospital.  (Ex. 5, Progress Notes of Jeffrey Brigg, M.D. at 1)

9.   On or about January 2, 2000, Mr. Simms was referred off-site to and examined at the University of Maryland Medical System. (Ex. 6, Lee Dep. at 27).

From late 1997 to the beginning of 2000, moreover, Mr. Simms was routinely provided with pain medication, often times narcotic pain medication, to alleviate the pain he suffered from his perianal Crohn's disease.  (Ex. 3, Simms Decl. at ¶ 7).

**B.    The Inadequate Medical Treatment Mr. Simms Received Beginning In December 2000**

From December 2000 to August 2003 (32 consecutive months), Mr. Simms was not seen by a surgeon and/or gastroenterologist for his Crohn's disease a single time.  (Ex. 3, Simms Decl. at ¶ 8; Ex. 4, Tessema Dep. at 66).  This was so even though: (i) Defendant Tessema himself, in August of 2001, opined that Mr. Simms needed an "annual colonoscopy

& GI follow up," (Ex. 7; Plaintiff's Deposition Exhibit 16);[7] and (ii) the WCI medical "plan

format" in January of 2002 indicated that Mr. Simms was "scheduled for off site" visits (Ex.

7, Plaintiff's Deposition Exhibit 18).

The Medical Defendants' expert gastroenterologist, Michael Weinstein, M.D., opined

that "[s]pecialist follow-up every 3-4 months seems reasonable." (Ex. 2; Weinstein Report at

3). At his deposition, moreover, Dr. Weinstein testified:

> **Q:**    So, for this three-year period, given the Plaintiff's history and given his
> constant complaints of pain, you don't think that he [Mr. Simms] should have
> been seen by a gastroenterologist or a gastroenterological surgeon?
>
> **A:**    I think he probably should have been seen.

(Ex. 8, Deposition of Michael Weinstein, M.D. at 56 ("Weinstein Dep.")). Dr. Linda Lee,

Mr. Simms's expert gastroenterologist, opined that Mr. Simms did not receive proper

evaluation and treatment for his Crohn's disease from December 2000 until August 2003.

(Ex. 1, Lee Report at 2). She opined further that, "[d]uring that time frame, Mr. Simms was

rarely, if ever, evaluated by a gastroenterologist or surgeon to rule out, among other things,

the possibility of a recurrent rectal abscess, despite Mr. Simms's constant rectal pain and past

medical history of prior abscesses and surgeries." (Id.).

When asked why Mr. Simms was not seen by a specialist until August 27, 2003,

Defendant Tessema explained that "there was no sign of any flare-ups that we found." (Ex.

4, Tessema Dep. at 78; at 53 "I have never seen any flare-ups in him with regard to

Crohn's"). Yet, in direct contradiction of Defendant Tessema's explanation, Dr. Weinstein

---

[7]    Certain portions of several of the Plaintiff's Deposition Exhibits (i.e., 5, 8, 9,10, 15, 16, and 18 ) were
highlighted for purposes of the depositions. When these exhibits are scanned in PDF format, the language that
is highlighted is illegible. Therefore, there are clean copies of the aforesaid exhibits submitted along with
exhibits containing the highlight notations. The clean copies appear immediately behind the highlighted copies
in Exhibit 7.

noted that, on September 27, 2001, Mr. Simms was experiencing flare-ups: "Complaints consistent with flare-up of his chronic condition including bleeding, pain, drainage." (Ex. 9, Notes of Michael Weinstein, M.D. at 2). Furthermore, when asked why Defendant Tessema decided to refer Mr. Simms off-site to see a surgeon and/or gastroenterologist at the University of Maryland Medical System on or about August 27, 2003, in particular, what had changed about Mr. Simms's condition that warranted Mr. Simms's need to see a specialist, Defendant Tessema first explained that Mr. Simms "increasingly continues to complain." (Ex. 4, Tessema Dep. at 80). Later, in the deposition, Defendant Tessema explained that he referred Mr. Simms off-site because "the degree of pain" about which Mr. Simms complained had changed. (Id. at 82). Contrary to Defendant Tessema's deposition testimony, the volume of Mr. Simms complaints of pain and the degree of that pain did not change in or about August of 2003, however. (Ex. 3, Simms Decl. at ¶ 9).[8] Furthermore, when asked the same question, Dr. Weinstein testified that the referral was a "cover your ass" and that the referral was "[n]ot necessarily based upon any change in the patient's condition." (Ex.8, Weinstein Dep. at 95)

Moreover, Defendant Tessema's referral in August 2003 was not a one-time referral. There has been a continued need for Mr. Simms to see a gastroenterologist and/or surgeon. Indeed, since seeing a specialist on August 27, 2003 at the University of Maryland Medical System, Mr. Simms has been seen by specialists at University of Maryland Medical System at least ten (10) times, including the following dates: September 23, 2003, November 3 and

---

[8]    When asked to explain the difference in the degree of pain, Defendant Tessema stated: "He was complaining of severe tenderness and he was complaining about pain during deification, pain during sitting, pain during everything, literally." (Ex. 4, Tessema Dep. at 82-83). A simple review of the 44 sick call requests Mr. Simms made between December 2000 and August 2003 demonstrate that Mr. Simms's complaints of pain related to his Crohn's disease did not in fact change, as Defendant Tessema states. See Ex. 11, Sick Call Requests.

26, 2003, January 9 and 13, 2004, February 3 and 13, 2004, March 5, 2004, June 9, 2004, and July 20, 2004. (Ex. 3, Simms Decl. at ¶ 10; Ex. 6, Lee Dep. at 33-38). That need continues to this day. (Ex. 3, Simms Decl. at ¶ 10).

Furthermore, Defendant Galley spoke with Defendant Tessema in connection with the treatment Mr. Simms received for his Crohn's disease. (Ex. 10, Deposition of Jon Galley at 51-52 ("Galley Dep.")). Significantly, Defendant Galley has the authority to refer Mr. Simms off-site to see a specialist, (Id. at 90) and he has the authority to get a second-opinion (Id. at 89).

### C.    Withholding of Pain Medication

From December 2000 through August of 2003, Mr. Simms made at least forty-four (44) sick call requests complaining (and describing) the pain he experienced because of his Crohn's disease. (Ex. 3, Simms Decl. at ¶ 13; Ex. 11, Sick Call Requests). WCI procedures require that Defendant Tessema or the nurse practitioner sign-off on the sick call requests that are filed by inmates at WCI. (Ex. 4, Tessema Dep. at 34). The following are just a few examples of Mr. Simms's complaints of pain on different days during that time period:

- "I am having stomach pain"
- "Pain in Rectum"
- "Tenderness & Pain"
- "Very Painful to sit down on"
- "Very painful and a lot of discomfort"
- "I am suffering great pain"
- "I am hurting between my buttock and rectum"
- "Rectum swollen & lots of pain"
- "I have great rectal pain"
- "Rectum Burning inflame, swellen [sic] & very pain full"
- "Extreme pain, hard to sit and lay down on rectum because of pain
- "extreme rectal pain"
- "My rectum burns & cramps like pain in my rectum"
- "A lot of discomfort in my rectum region"
- "Rectum swollen, Right Buttock sore and painful, hurts"

- "I am having extreme pain and discomfort on the inside walls of my rectum"
- "Rectal Pain cramps, sharp cutting pain in rectum[,] a lot of discomfort sitting"
- "I am having sharp rectal cramps within my rectum, multi-rectal cramps & pain!"

(Ex. 11, Sick Call Requests). Yet, from December 2000 through August of 2003, Mr. Simms was provided an over the counter does of Tylenol on a handful of occasions. (Ex. 3, Simms Decl. at ¶ 13). Despite his persistent and detailed complaints of pain and discomfort, Mr. Simms was never prescribed narcotic pain medication during that time. Id.

By contrast, from 1997 through the beginning of 2000, Mr. Simms was prescribed Tylenol, Motrin and Naprosyn on a regular, almost monthly, basis because of pain associated with his Crohn's disease. (Ex. 3, Simms Decl. at ¶ 15; Ex. 22, Medication ("MAR") charts). During that time, moreover, Mr. Simms was prescribed narcotic pain medication, such as Darvocet, Percocet and Tylenol #3, multiple times because of pain caused by his Crohn's disease. Id.[9]

Dr. Lee opined that, "[n]ot only has [Mr. Simms's] Crohn's disease been improperly evaluated, but Mr. Simms myriad complaints of pain have been ***ignored*** from 2000 to the present." (Ex. 1, Lee Report at 2) (emphasis added). Mr. Simms's complaints of pain were therefore not meaningfully evaluated. Dr. Lee opined further that "[s]evere perianal Crohn's disease may warrant the use of narcotic pain medication for the control of pain." Id. For symptoms associated with Crohn's disease such as those symptoms experienced by Mr. Simms, Dr. Lee has prescribed narcotic pain medication. Id. Dr. Lee also explained that "the failure to properly evaluate and treat Mr. Simms's disease for that length of time [from

---

[9]       As this Court will recall, Defendant Tessema submitted an affidavit to this Court in support of his previously filed motion to dismiss, or in the alternative, motion for summary judgment, in which he stated that narcotic pain medication is ***not*** allowed at WCI. In his answers to interrogatories, however, Defendant Tessema states that narcotic pain medication is allowed at WCI. This issue is discussed more fully below.

-11-

December 2000 to August 2003] contributed to the rectal pain Mr. Simms experienced and continues to experience."  Id.  In his deposition, Dr. Weinstein testified that "short-term narcotics" would be reasonable to treat Mr. Simms's condition.  (Ex. 8, Weinstein Dep. at 80).

Defendant Tessema's reasons for withholding pain medication from Mr. Simms are not credible.  As this Court will recall and as noted above, the Medical Defendants previously filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (the "Previous Motion").  In support of the Previous Motion, the Medical Defendants submitted an affidavit signed and dated by Defendant Tessema.  In that affidavit, Defendant Tessema stated, under penalty of perjury, the following:  "Mr. Simms has an exaggerated response to pain, and he desires narcotic pain relievers, but that is not possible or warranted for his condition or possible in a prison setting."  (Ex. 12, Affidavit of Isaias Tessema at ¶ 2). This Court doubted that representation and for good reason.  Unlike what Defendant Tessema would have this Court believe, narcotic pain medication is allowed in a prison setting, and in particular narcotic pain medication is allowed at WCI.[10]  (Ex. 4, Tessema Dep. at 58, "**Q**: Is narcotic pain medication that is prescribed for a medical reason, is that allowed at Western Correctional Institution?  **A**: Yes."; Ex. 10, Galley Dep. at 80).  Furthermore, in his Answers to Interrogatories, Defendant Tessema states that Mr. Simms "appears to be seeking drugs unwarranted by his condition[]."  (Ex. 13, Defendant Tessema's Answers to Interrogatories (No. 27)).  But at his deposition, Defendant Tessema contradicted himself by stating that he never said that Mr. Simms was seeking narcotics.  (Ex. 4, Tessema Dep. at 61-62).

---

[10]    The administration of narcotic pain medication to inmates at WCI is constantly supervised, as it is watch and take.  (Ex. 4, Tessema Dep. at 61; Ex. 10, Galley Dep. at 80-81).

Now, Defendant Tessema has once again changed his position and claims only that narcotic pain medication was not and is not appropriate for Mr. Simms's condition, even in the face of Mr. Simms's forty-four (44) sick call requests from December 2000 through August 2003 regarding his pain. Defendant Tessema explained that the factors he considers in determining whether pain medication is appropriate include: "fractures, acute fractures, surgeries, for the first few days of post-surgery, severe trauma." (Ex. 4, Tessema Dep. at 58). However, on November 4, 2003 and February 3, 2004, when surgeons at University of Maryland Medical System prescribed Percocet for Mr. Simms's pain, following sigmoidoscopies, Defendant Tessema refused to give Mr. Simms the recommended Percocet. (Ex. 7, Plaintiff's Deposition Ex 15; Ex. 3, Simms Decl. at ¶ 11; Ex. 23, Off-Site Recommendation of Specialist; Ex. 4, Tessema Dep. at 83).

Additionally, Defendant VanMeter also failed to provide Mr. Simms with much needed pain medication. When Mr. Simms submitted his sick call requests because of his pain, the Nursing Protocol authorizes nurses to prescribe regular Tylenol to inmates for pain. (Ex. 14, Deposition of Denise VanMeter at 42 ("VanMeter Dep.")). But when Mr. Simms made sick call requests because of his pain, several of which were handled by Defendant VanMeter, she did not provide Mr. Simms with regular Tylenol. (Ex. 3., Simms Decl. at ¶ 14; Ex. 11, Sick Call Requests; Ex. 7, Plaintiff's Deposition Exhibit 8).

The Correctional Defendants knew about Mr. Simms's complaints relating to the inadequate medical care he received for his Crohn's disease and pain related thereto. (Ex. 7, Plaintiff's Deposition Exhibit 1-3; Ex. 18, Sondervan Exhibit 3). Defendant Galley was "aware of statements of [Mr. Simms] of his pain" through the "the various complaints that [Mr. Simms] made." (Ex. 10, Galley Dep. at 81). Indeed, Defendant Galley described Mr.

-13-

Simms as a "prolific complainer" who has filed "many, many, many ARPS [Administrative Remedy Procedures]" in connection with, among other things, medical complaints. (<u>Id.</u> at 39-40). Furthermore, Defendant Galley knew before Mr. Simms filed his complaint that Mr. Simms believed the medical staff was acting with deliberate indifference to his Crohn's disease. (<u>Id.</u> at 67). Defendant Galley himself has Crohn's disease, and he testified that he is familiar with it and that it can be a painful condition. (<u>Id.</u> at 67).

### D.    Mr. Simms's Inability to Comply With the Prescribed Sitz Bath Treatment

Mr. Simms has been in a single cell since September 2001. (Ex. 3, Simms Decl. at ¶ 18). Lieutenant Lancaster, who formerly was the housing unit manager of Mr. Simms's cell block, was responsible for placing Mr. Simms in a single cell. (<u>Id.</u>). Lieutenant Shreve subsequently assumed that position and honored Lieutenant Lancaster's decision to place Mr. Simms in a single cell. (<u>Id.</u>). Mr. Simms does not have a medical order prescribing a single cell, however. (<u>Id.</u>; Ex. 10, Galley Dep. at 66). Mr. Simms can be removed from his single cell and placed in a cell with an inmate unless he has a medical order prescribing a single cell. (Ex. 3, Simms Decl. at ¶ 19). On several occasions, Mr. Simms has been harassed by prison officials that they are going to move Mr. Simms into a cell with an inmate. (Ex. 3, Simms Decl. at ¶ 19)

Defendant Tessema claims that he did not know that Mr. Simms requested a single cell. (Ex. 4, Tessema Dep. at 99). That claim is belied by Defendants Galley and Sondervan, both of whom testified that Lieutenant Shreve conferred with Defendant Tessema regarding a single cell for Mr. Simms in 2001. (Ex. 10; Galley Dep. at 74; Ex. 15, Deposition of William Sondervan at 62 ("Sondervan Dep.")). One of the considerations for placing Mr. Simms in a single cell was because Mr. Simms was having trouble using his sitz bath. (Ex. 10, Galley

Dep. at 87). Defendant Galley, moreover, had a discussion with Defendant Tessema regarding a single cell for Mr. Simms. (Ex. 10, Galley Dep. at 60).

In March 2000, the medical personnel at the Maryland House of Correction Annex recommended to WCI that Mr. Simms be assigned to a single cell for medical reasons. (Ex.7, Plaintiff's Deposition Exhibits 5, 9). Defendant Sondervan testified that it would be very unusual for a receiving institution not to honor the sending institution's housing recommendation when if that recommendation is based on a medical reason. (Ex. 15, Sondervan Dep. at 57-58). Defendant Galley testified that "the medical unit" would have looked at the substance of that assignment. (Ex. 10, Galley Dep. at 78). Defendant Tessema is responsible for prescribing medical orders for single cells. (Ex. 14, VanMeter Dep. at 52). Dr. Lee opined that, among other things, privacy is required for Mr. Simms to obtain the intended effect of a sitz bath. (Ex. 1, Lee Report at 2). Additionally, Dr. Lee noted that "[t]he performance of a sitz bath and episodes of fecal incontinence, which Mr. Simms experiences, may be associated with intense embarrassment." Id. Dr. Weinstein believed that it would be reasonable to isolate an inmate if that inmate has drainage. (Ex. 8, Weinstein Dep. at 89). Mr. Simms has, and continues to have, drainage because of his disease. (Ex. 4, Tessema Dep. at 90-91; Ex. 24, University of Maryland Medical System record dated 11/3/2003).

Despite being housed in a single cell, Mr. Simms has been and continues to be unable to comply with the prescribed sitz bath treatment. The water for Mr. Simms's sitz bath is not hot and the sitz bath does not fit on the commode in his cell. (Ex. 3, Simms Decl. at ¶ 16). Mr. Simms complained to the Defendants about the temperature of the water and the fact that the sitz bath does not fit on his commode. Id. Both Dr. Lee and Dr. Weinstein opined that

"hot water" is necessary for Mr. Simms's sitz bath.  (Ex. 1, Lee Report at 2; Ex. 2, Weinstein

Report at 1).   Since July 9, 2004, Mr. Simms has been without a sitz bath (the actual

apparatus) in his cell, which is not by his choice.  (Ex. 3, Simms Decl. at ¶ 17).

> **E.     Exhaustion Of Administrative Remedies**

Defendant Galley, the Warden of WCI, described the complaint process at WCI as

follows:

> An inmate can file an Administrative Remedy, they can file a letter of complaint,
> they can file an Inmate Grievance Commission request, . . . and ultimately when
> they exhaust those remedies, ***they can go to the Circuit Court and/or to the
> Federal Courts under the 1983 Act.***

(Ex. 10, Galley Dep. at 65).  Defendant Galley also testified that filing a grievance with the

Inmate Grievance Office is unavailable to inmates who have complaints against the medical

staff at WCI.  Id.

Additionally, Defendant Sondervan described the complaint process at WCI as

follows:

> An inmate who has a grievance or feels that – he's not getting something
> he should have or something is wrong or whatever the reason is, they have a way
> to express that and they do through the ARP process, you know.

> They will write up an ARP and lay out their grievance.  The grievance
> would normally go to an ARP coordinator in that particular institution.  Then it
> would be researched and evaluated and it normally goes to a warden for decision.

> Any then it would go back to the inmate saying they found it favorable,
> they found it unfavorable, they found it partially favorable, whatever the case may
> be, and address the issue.

> If in fact the inmate does not like the answer that he or she received, then
> they could appeal that to the commissioner's office.  And when it comes the
> commissioner's office where it would be further evaluated and additional research
> if necessary, then a decision would be made.

Now, those decisions were normally made – because I had 24,000 inmates at 27 prisons, what we normally would do is I would delegate that for the most part to the regional commissioners to review that.

Sometimes I did it myself.  They would take a look at the inmate's complaint, they would look at the investigation and all the things that were uncovered and make a reasonable decision based on policy and on what's fair and reasonable.  And then that would go back to the inmate.

And if the inmate at that point still was unhappy with the decision, they could appeal it to the inmate grievance office.  The inmate grievance office then in turn goes through the same kind of process where they would look at the complaint, they would look at the warden's response, the commissioner's response and they would make a determination.

*And if the inmate – then I think that was the last thing*.  After they went through all that, then I think they can take it to the Circuit Court.

(Ex. 15, Sondervan Dep. at 25-26).

## III.  ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir.1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non- moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form

of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324.

### B. Deliberate Indifference Standard

In order to state a constitutional claim for denial of medical care, a plaintiff must demonstrate that the defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### 1.    Mr. Simms's Deliberate Indifference Claim Against The Defendants.

Here, there is no dispute that Mr. Simms suffers from a serious medical condition, namely, perianal Crohn's disease and the associated pain and symptoms. See Ex. 20, Memorandum at 5 (concluding that Plaintiff's Crohn's disease is a "serious" medical condition)). Thus, the remaining issue is whether the Defendants were deliberately indifferent to Mr. Simms's serious medical condition. As will be demonstrated below, the facts establish that the Defendants were deliberately indifferent to Mr. Simms's serious medical condition.

### a.    The Medical Defendants

The Medical Defendants argue that Mr. Simms's complaints are without substance. In particular, they claim that their "depositions" show a medical treatment plan that addresses Mr. Simms's complaints of pain, his request for a single cell, and hot water.  The record evidence, however, paints a different picture.  Indeed, it shows that Mr. Simms's complaints of pain, his request for a medical prescription for a single cell, hot water, and a sitz bath that fits on the commode in his cell, have not been addressed.

### (i)    Inadequate Medical Care Beginning in December 2000

The evidence establishes that Defendant Tessema's so-called care and treatment of Mr. Simms is so grossly incompetent, inadequate or excessive as to shock the general conscience or to be intolerable to fundamental fairness.[11]  As set forth above, from late 1997 to December 2000, Mr. Simms was referred off-site by the medical director at WCI and was examined by specialists on at least nine (9) separate occasions.  When Defendant Tessema became the medical director at WCI in December 2000, Mr. Simms was **not** seen by a single specialist between December 2000 and August 2003.  The failure of Defendant Tessema to refer Mr. Simms off-site to a specialist for over two and a half years when Defendant Tessema was aware of the severity of Mr. Simms's condition, his lengthy medical history, his constant complains of pain, and his previous visits with specialists, smacks of deliberate indifference.  See Fowler v. Hodge, M.D., No. 03-7008, 2004 WL 618070, at *3 (10th Cir.

---

[11]      In his Report, Dr. Weinstein states that "I do not believe that the treatment provided at any time was 'so grossly incompetent that it shocks the conscience and constitutes the willful infliction of pain."  (Ex. 2, Weinstein Report at 2).  That statement should be stricken from the record.  First, when that statement was made, Dr. Weinstein did not understand what that standard meant.  (Ex. 8, Weinstein Dep. at 50-52).  Second, even if Dr. Weinstein did understand what that _legal_ standard meant, such testimony does nothing more than offer a legal conclusion which does not comport with Fed. R. Civ. P. 704.  See United States v. Barile, 286 F.3d 749, 760 (4th Cir.2002) (explaining that expert testimony on an ultimate issue is excludable under Rule 702 if it does not aid the jury and expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination); Woods v. Lecureux 110 F.3d 1215, 1219-21 (6th Cir. 1997) (concluding that the district court did not abuse its discretion by excluding Dr. Mintzes's testimony on "deliberate indifference").

March 30, 2004) ("Of course, if a patient's need is so plain, even a lay person would easily recognize the necessity for a [specialist's] attention, the failure to refer the patient could be actionable.").

Moreover, the record evidence establishes that Defendant Tessema, in his medical judgment, believed in 2001 that Mr. Simms needed to see a gastroenterologist on an annual basis.  See Fowler, 2004 WL 618070, at *2 (finding that refusal to refer inmate to specialist for assessment of back pain did not violate the Eighth Amendment, because the prison doctor examined the plaintiff on numerous occasion and never opined that services of a specialist were necessary); Jones v. Simek, 193 F.3d 485, 490 (7th Cir. 1999) (noting that the inmate doctor failed to provide a promised specialist visit for six months).  Defendant Tessema was aware during that time period that Mr. Simms experienced severe and constant pain (Mr. Simms had filed 44 sick call requests), drainage and flare-ups.  See Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) ("A jury could conclude that despite these requests and Hathaway's constant complaints, Foote did not take Hathaway's condition seriously because he did not refer Hathaway to Quellman [an orthopedic specialist] for a re-evaluation until after Hathaway filed his lawsuit.").  Defendant Tessema clearly did not take Mr. Simms's condition seriously because he did not refer Mr. Simms to a specialist until after Mr. Simms initiated the instant action and appointed counsel got involved in this case.  As Defendant Tessema's own expert coined it:  these recent specialists visits were done as a "cover your ass" measure.

Furthermore, Dr. Lee opined that Mr. Simms did not receive proper treatment from December 2000 through August 2003, (Ex. 1, Lee Report at 2) and that "the failure to properly evaluate and treat Mr. Simms's disease for that length of time contributed to the

-20-

rectal pain Mr. Simms experienced and continues to experience." <u>Id.</u>  Thus, Mr. Simms was not meaningfully evaluated.  Dr. Lee further opined that, "[b]ecause Mr. Simms's presentation is less typical than the average patient with Crohn's disease and because of the severity of his perianal disease, he should have been evaluated on a monthly basis by a gastroenterologist until his symptoms and/or disease improved." <u>Id.</u>  Dr. Weinstein opined that specialist follow-up every 3-4 months for Mr. Simms's perianal disease is reasonable.  He further testified that Mr. Simms should have been seen by a surgeon and/or gastroenterologist between December 2000 through August 2003.

The evidence establishes that Defendant Tessema acted with deliberate indifference to Mr. Simms's serious medical needs by not referring Mr. Simms to a specialist for over two and one half years.  That Defendant Tessema finally referred Mr. Simms off-site to see a specialist on August 27, 2003 does not insulate Defendant Tessema from liability.  <u>See</u> <u>Hathaway</u>, 37 F.3d at 68 (declining "to adopt a rule that in effect would exempt general practitioners from being deliberately indifferent to a patient's serious medical needs as long as that general practitioner at some point refers the patient to a specialist").  The fact that Mr. Simms *needed* to see specialists at least ten (10) additional times after the initial visit in August of 2003 (and in such a short time frame) demonstrates that Mr. Simms needs to see specialists for his serious medical condition, and further that he needed to be seen by specialists from December 2000 to August 2003.

Based upon the numerous disputes of fact identified by Mr. Simms and assuming all inferences in favor of the non-moving party, summary judgment is not appropriate in this case.

**(ii)        Withholding of pain medication**

As this Court noted back in April 2003, "[t]he refusal by [the Medical] Defendants to provide Plaintiff with effective pain relief for his Crohn's disease is [ ] a material fact this is the subject of a genuine dispute." Ex. 20, Memorandum at 6.  The Medical Defendants seem to gloss over this finding and persist in claiming that Mr. Simms's complaints of pain have been addressed.  They are wrong.

The Medical Defendants withheld pain medication from Mr. Simms from December 2000 to August 2003 (except for the handful of times  when he received regular Tylenol), even though Mr. Simms constantly complained of pain and discomfort related to his Crohn's disease.  The Medical Defendants knew about his complaints because of the 44 sick call requests that Mr. Simms filled-out.  The Medical Defendants' conclusory statement that they addressed Mr. Simms's complaints  is undermined by Mr. Simms's  constant complaints of pain.  See McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) ("Despite the repeated complaints of pain he was suffering from, a jury could find that [the prison doctor] and nurse [] basically did nothing to alleviate that pain, essentially letting [the inmate] suffer even as his condition was deteriorating.  Other than Tylenol and pepto-bismol, the main medication [the inmate] received was an anti-gas medication, Bentyl.  Insofar as [the inmate's] pain was concerned, a jury could find that the medication provided to [the inmate] was so cursory as to amount to no care at all.") (footnote omitted); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (noting that inmate's "[c]ontinued complaints . . . would have put defendants on notice that additional care was required").  Additionally, as illustrated above, the record is crystal clear that Defendant Tessema's purported reasons (ever evolving as they are) for refusing to

provide Mr. Simms with narcotic pain medication are simply not credible. <u>See</u> supra at 11-12.

Furthermore, the record evidence establishes that Defendant Tessema, on at least two occasions, <u>i.e.</u>, November 4, 2003 and February 3, 2004, refused to provide Mr. Simms pain medication that was recommended by specialists following sigmoidoscopies. <u>See</u> <u>Jones v. Simek</u>, 193 F.3d 485, 490 (7th Cir. 1999) (stating that the prison doctor's "response was to refuse to prescribe pain medication when needed and to fail to provide a promised specialist for six months. Furthermore, on more than one occasion after July 1993, [prison doctor] refused to follow the advice of the specialists who were treating [the inmate]. If proven, these allegations describe [ ] deliberate indifference to serious medical needs"); <u>West v. Keve</u>, 571 F.2d 158, 162 (3d Cir. 1978) (finding that inmate stated a claim for deliberate indifference based on denial of post-operative pain medication; although plaintiff was provided with aspirin, "this may not constitute adequate medical care"). The undisputed evidence establishes that Mr. Simms is still in pain and continues to need pain medication. (Ex. 3, Simms Decl. at ¶ 2; Ex. 27, Documented complaints of pain[12]). Indeed, during his most recent visit to a specialist at University of Maryland Medical System on July 20, 2004, the specialist prescribed narcotic pain medication for Mr. Simms. (Ex. 3, Simms Decl. at ¶ 12).[13] The need for effective pain medication for Mr. Simms clearly exists.

### (iii) Mr. Simms's demonstrated inability to comply with the prescribed sitz bath treatment

As this Court previously noted, "it appears that [the Medical] Defendants have provided Plaintiff with a means to treat his condition that require facilities, i.e., hot water and

---

[12]    Exhibit 27 contains only several of Mr. Simms's recent documented complaints relating to pain.

[13]    The off-site specialists (neutral, third-parties) who have recently, <u>i.e.</u>, November 4, 2003, February 3, 3004, and July 20, 2004, and repeatedly prescribed narcotic pain medication to Mr. Simms speaks volumes.

privacy, that are not available to him."  Ex. 20, Memorandum Opinion at 5.  Although this Court noted the Medical Defendants' argument that Mr. Simms was allegedly non-compliant with his treatment, the Court nonetheless concluded:  "The issue of whether or not Plaintiff is able to comply with the treatment prescribed and the extent of Defendants' knowledge with respect to that ability, represents a genuine dispute of material fact."  Id. at 6 (emphasis in original).

Mr. Simms has not been able to comply with the prescribed sitz bath treatment because he does not have access to hot water or a sitz bath that fits on his commode.  (Ex. 3, Simms Decl. at ¶ 14; Ex. 26, Complaints re: Sitz Bath & Hot Water).[14]  Mr. Simms has repeatedly complained about these two issues to the Defendants.  (Id.).  Yet, Mr. Simms still does not have hot water, and since July 9, 2004, Mr. Simms has been without a sitz bath (apparatus) in his cell, which is not by his choice.  (Id. at 15).

Furthermore, while Mr. Simms is and has been in a single cell, Mr. Simms is not in that single cell based on a medical order prescribed by Defendant Tessema.  That is the issue here, because absent that medical order, Mr. Simms still faces the real fact that he will be displaced from his single cell if another inmate needs a single cell for a medical reason.  Because Mr. Simms does not have a medical order prescribing a single cell, the issue as to whether he has the means to comply with the sitz bath treatment, i.e., hot water and privacy, still exists.[15]

---

[14]    Additionally, the Defendants in this case have known since April 29, 2003 (the date this Court issued its Memorandum) that there was a question of fact regarding whether Mr. Simms was and is able to comply with the prescribed sitz bath treatment.  The key considerations to the Court at that time were hot water and privacy.

[15]    Moreover, prison officials have harassed Mr. Simms about that fact, indicating that they are going to move Mr. Simms into a cell with another inmate.

**b.     The Correctional Defendants**

The Correctional Defendants have moved for summary judgment on the basis that "[b]ecause Warden Galley and Commissioner Sondervan did not impede the delivery of medical care, they are entitled to summary judgment."  Correctional Defendants Mem. at 13. They are mistaken.

In Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit stated that "[s]ection 1983 liability on the part of the supervisory defendants requires a showing that: (1) the supervisory defendants failed to promptly provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctor's performance; *or* (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  Id. at 854 (internal citations omitted; emphasis added).

Mr. Simms does not claim that the Correctional Defendants interfered with the Medical Defendants' performance, as suggested by the Correctional Defendants.  Rather, Mr. Simms claims that the Correctional Defendants failed to promptly provide Mr. Simms with needed medical care and/or tacitly authorized or were indifferent to the Medical Defendants' constitutional violations.  The record evidence establishes that the Correctional Defendants were deliberately indifferent to Mr. Simms's serious medical needs.  At a minimum, the record evidence establishes that there are disputed factual issues that render summary judgment inappropriate.

Defendant Galley knew that Mr. Simms was housed in a single cell and that such an assignment was not due to a medical order prescribing a single cell.  (Ex. 10, Galley Dep. at 31, 68).  Defendant Galley also knew that one of the reasons Mr. Simms was placed in a

single cell was due to the fact that Mr. Simms was having difficulty with his sitz bath. (Id. at 87). Defendant Galley was aware that Mr. Simms had Crohn's disease and that he filed many complaints about his pain. (Id. at 81, 39-40; Ex. 3, Simms Decl. at ¶ 20; Ex. 7, Plaintiff's Deposition Exhibits 1-3). Furthermore, Defendant Galley knew before Mr. Simms filed the complaint in this case that Mr. Simms believed the medical staff was acting with deliberate indifference to his Crohn's disease. (Id. at 67).

Armed with this knowledge, Defendant Galley did nothing. He did not refer Mr. Simms to a specialist or seek a second medical opinion, both of which he could have done (Id. at 90, 89), even though he knew Mr. Simms was in pain and further that Mr. Simms believed the Medical Defendants were acting with deliberate indifference to his serious medical needs.[16] Defendant Galley knew, moreover, from his personal experience with Crohn's disease, that it can be painful. (Id. at 67). Yet Defendant Galley did nothing. There was not even an inmate patient care conference concerning Mr. Simms in connection with his complaints about inadequate medical care until 2004, despite Mr. Simms's constant complaints. (Ex. 19, Care Conference Notes). Defendant Galley failed to promptly provide Mr. Simms with needed medical care and/or tacitly authorized or was indifferent to the Medical Defendants' constitutional violations.

The Commissioner is in charge of the Division of Correction, which includes WCI. (Ex. 15, Sondervan Dep. 10). The Commissioner's office, through Defendant Sondervan (an agent of that office), knew, either actually or constructively, about Mr. Simms's complaints relating to the treatment he received from the Medical Defendants for his Crohn's disease.

---

[16]     Defendant Galley has authority to institute a single-cell status for an inmate. (Ex. 15, Sondervan Dep. at 23). Defendant Galley is given the authority to exercise his judgment regarding the day-to-day operations of WCI. (Id. at 23).

-26-

(Ex. 15, Sondervan Dep. at 24-25; Ex. 18, Sondervan Exhibit 3).   Yet nothing was done. Such inaction is tantamount to the tacit authorization of the Medical Defendants' violations

The Correctional Defendants also argue that they are entitled to rely on the professional medical judgment of the health care providers who provide treatment and care to inmates.  This is not an absolute rule, however.  There are circumstances when it would be unreasonable for non-medical supervisory officials to rely on the opinions of medical staff. Indeed, when the evidence shows that prison supervisory officials knew or should have known that constitutional violations were occurring, they may not insulate themselves from liability by relying on the medical staff.  See Rodriguez v. McGinnis, No. 98-CV-6031CJS, 2004 WL 1145911, at *18-19 (W.D.N.Y. May 18, 2004).  As shown above, the evidence shows that the Correctional Defendants knew or should have known that constitutional violations against Mr. Simms were occurring.

Additionally, there is  no teeth to the investigations conducted by WCI and the Division of Correction when an inmate, like Mr. Simms, files an Administrative Remedy Procedure ("ARP") in connection with claims relating to inadequate medical care.  When an ARP is filed, ARP investigators, who report to Defendant Galley, conduct an investigation of the complaint.  That investigation, however, is meaningless.  When Mr. Simms filed an ARP outlining his complaints against the Medical Defendants, the ARP investigators discussed the care and treatment  Mr. Simms received from the  Medical Defendants with the Medical Defendants, the very  individuals who caused harm to Mr. Simms.  (Ex. 10, Galley Dep. at 46-53).  Stripped to its core, the ARP investigative process is a façade insofar as medical complaints against the Medical Defendants at WCI are concerned.   The Correctional Defendants no doubt know this but the  ARP investigative process remains the same,

probably because the Correctional Defendants can always argue to a Court, just as they do here, that they relied on the medical judgment of the health care providers and therefore are not liable. This policy of effectively ignoring an inmate's complaint about inadequate medical care at WCI is troubling, to say the least.[17]

**2.      Mr. Simms Has Exhausted the Administrative Remedies Available at WCI**

Under the Prison Litigation Reform Act of 1996 ("PLRA"), § 1997e(a) requires that "[n]o action shall be brought with respect to prison conditions under section 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As will be demonstrated below, Mr. Simms exhausted the administrative remedies available at WCI in connection with this case.

**a.      The Medical Defendants**

The Medical Defendants contend that "[p]laintiff's complaint is devoid of any allegations with regards to exhaustion and Plaintiff's pleadings are devoid of any statement concerning exhaustion." Medical Defendants' Mem at 26. Paragraph 30 of Mr. Simms's Amended Complaint provides: "Plaintiff Simms has fully exhausted all administrative remedies for resolving the issues raised herein." Moreover, exhaustion of remedies is an affirmative defense. See Casanova v. Dubois, 304 F.3d 75, 77 (1st Cir. 2002) (citing cases and explaining that exhaustion of PLRA remedies is an affirmative defense); Chase v. Peay, 286 F. Supp. 2d 523, 532 (D. Md. 2003) (referring to § 1997e(a) as a "defense"). The

---

[17]      Additionally, the fact that the Commissioner is aware that the Inmate Grievance Office lacks jurisdiction to consider claims against the Medical Defendants, (Ex. 15, Sondervan Dep. at 18) presents a fact question as to whether the Correctional Defendants tacitly authorized the Medical Defendants' constitutional violations here. Compare Ex. 7, Plaintiff's Deposition Exhibit 3 ("You have received adequate medical treatment for your condition.") with Ex. 25, ARP dated April 28, 2004 ("You [are] currently receiving the care deemed appropriate by WCI Medical Staff to diagnose and treat your medical complaints.").

Medical Defendants make absolutely no effort to affirmatively show that Mr. Simms failed to exhaust his administrative remedies and instead try to shift the burden to Mr. Simms.[18]   In any event, as demonstrated below, Mr. Simms has exhausted his administrative remedies that are available to him at WCI.

      **b.**      **The Correctional Defendants**

      The Correctional Defendants attempt to affirmatively show that Mr. Simms failed to exhaust his administrative remedies, but ironically the very evidence they submit to this Court demonstrates that Mr. Simms did in fact exhaust his administrative remedies.   The Correctional Defendants note that, since 1999, the Inmate Grievance Office (IGO) has received seven (7) grievances by Mr. Simms relating to the medical treatment for his perianal Crohn's disease.  See Correctional Defendants' Mem. at 9.[19]   As both Defendant Sondervan and Galley testified at their depositions, the highest available level to grieve a complaint within WCI is with the IGO.  (Ex. 10, Galley Dep. at 65; Ex. 15, Sondervan Dep. at 25-26).[20] Thus, Mr. Simms has exhausted his administrative remedies at WCI.

---

[18]      The Medical Defendants previously raised this argument to this Court and it failed.

[19]      In the Correctional Defendants' Motion, they identify the issues for which inmates may seek relief through the Division of Correction's Administrative Remedy Procedure which includes, among other things, medical services.   Correctional Defendants' Mem. at 8.  They qualify that statement with the following: "although the Division of Correction may exercise its role in addressing certain medical complaints, the IGO does not have jurisdiction of complaints against the private health-care contractor or its employees who provide medical services to State prisoners."  Id. at 8.  However, in the section setting forth the grievance procedures in the January 2003 WCI Inmate Handbook, there is no such qualifying language:  "The law establishing the Inmate Grievance Office provides for it to be a separate agency to hear, consider, and advise the Secretary of the Department of Public Safety and Correctional Services on the merit of any complaint or grievance filed by an inmate."  (Ex. 16, WCI Inmate Handbook at 21).  Additionally, it provides examples of the types of grievances the IGO hears, including "Denial of basic medical care or dental care."  (Id.).  The fact that Mr. Simms's medical complaints have been dismissed from the IGO because of lack of jurisdiction does not bear upon whether Mr. Simms exhausted his remedies, which he indisputably did.  In fact, Mr. Simms should be lauded for his adherence to the procedures outlined in the Handbook when filing a grievance relating to denial of basic medical care.

[20]      Furthermore, there can be no question that the Correctional Defendants and Medical Defendants were on notice and aware of Mr. Simms' complaints.

The Correctional Defendants seem to suggest that Mr. Simms failed to exhaust his administrative remedies, because Mr. Simms did not petition for further review at the state level, i.e., Circuit Court.  <u>See</u> Correctional Defendants' Mem. at 9.  Mr. Simms has the option of seeking redress of his claims after they are exhausted within WCI at either the state level or the federal level.  (Ex. 10, Galley Dep. at 65; Ex. 15, Sondervan Dep. at 25-26).  As Mr. Simms instituted the instant action, the Correctional Defendants' argument is without merit.

**3.    The Amended Complaint is not Barred by the Applicable Statute of Limitations**

The Correctional Defendants argue that any of Mr. Simms allegations which fall outside of the three year statute of limitation should be dismissed.  The allegations in this case all fall within the requisite statutory time frame.

In <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985), the Supreme Court held that the statutes of limitations for § 1983 actions are borrowed from State law but characterization of § 1983 actions to determine the most analogous State statute of limitations is a question of federal law.  <u>Wilson</u> determined that the proper limitations period for a § 1983 action is the limitations period for personal injury actions in the State where the § 1983 claim arises.  Maryland applies a three-year state of limitations to personal injury claims.  <u>See</u> Cts. & Jud. Proc. § 5-101.

Mr. Simms filed his complaint on October 7, 2002.  That complaint was subsequently amended on September 22, 2003.  The relevant time frame for Mr. Simms's deliberate indifference allegations against the Defendants began in December 2000.  Mr. Simms's claims, therefore, are not barred by the applicable statute of limitations.

**4.    Defendant Galley is Not Entitled to Qualified Immunity**

Defendant Galley argues that he is entitled to summary judgment on the basis of qualified immunity.  Qualified immunity is a doctrine that shields government officials performing discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Generally, when the doctrine of qualified immunity is raised as a defense, the Court must first identify the right infringed by the challenged conduct.  Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996).  The Court then considers whether, at the time of the violation, the right was clearly established, and whether a reasonable person in the official's position would have known that his conduct would violate that right."  Id. (quoting Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir.1992)).

Defendant Galley argues that "[t]he evidence has established that the Defendant has not violated any clearly established constitutional right of which a reasonable public official should have known."  Correctional Defendants' Mem. at 17.  Defendant Galley's argument has no merit, because the law was clearly established in 1976 that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  The undisputed facts in this case do not establish a claim for qualified immunity on behalf of Defendant Galley,

**5.    This Court Does Have Subject Matter Jurisdiction Over Mr. Simms's Deliberate Indifference Claim**

The Medical Defendants argue that this Court lacks subject matter jurisdiction over Mr. Simms's claim.  They claim that "a fair reading of plaintiff's complaint reveals that plaintiff is attempting to plead, at best, a claim of negligence."  Medical Defendants' Mem. at 24.  Setting aside the absurdity of this argument, it is patently obvious that this Court has

jurisdiction over Mr. Simms's claims that are brought pursuant 42 U.S.C. § 1983.  As such,

federal question jurisdiction clearly exists here.  To be sure, the second paragraph of Mr.

Simms's Amended Complaint provides:

> This court has jurisdiction to consider the merits of this action under 28 U.S.C. §
> 1331, this being a civil action arising under the laws of the United States, and §§
> 1343(3) and (4), this being an action to redress the deprivation, under color of
> state law, of rights secured by the Constitution of the United States and by Acts of
> Congress protecting the civil rights of citizens, as well as under 42 U.S.C. § 1983,
> this being an action seeking redress for the violation of the plaintiff's
> constitutional and civil rights.

The Medical Defendants raised this argument when it initially moved to dismiss this

case back in 2003 when Mr. Simms appeared pro se.  Their argument was unavailing then

and it is unavailing now.  Subject matter jurisdiction plainly exists here.

**6.      The Current Commissioner Should be Substituted for Defendant Sondervan**

Counsel for the Correctional Defendants argues that Defendant Sondervan should be

dismissed from this case, because Mr. Simms seeks injunctive relief against Defendant

Sondervan and he is no longer employed by the Maryland Division of Correction.  See

Correctional Defendants' Mem. at 13.

It should be noted that Mr. Simms sued the Commissioner of the Division of

Correction.  When the Amended Complaint was filed in September 2003, the Division of

Correction's web-page indicated that William Sondervan was the acting Commissioner.

Moreover, at all times relevant to the claims in the Amended Complaint, Defendant

Sondervan was the Commissioner of the Division of Correction.  Defendant Sondervan

testified that he ended his employ as the Commissioner some time September 2003.

The Affidavit of Service for receipt of the Amended Complaint, which is dated

October 1, 2003, indicates that service was effected upon "Wanda L. Miller Sect.

Commissioner (WILLIAM W. SONDERVAN, Ed. D., CCE, Commissioner, is no longer employed with this company)." (Ex. 17, Affidavit of Service). Thus, service was effected on the Commissioner. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citations omitted). The fact that counsel (the Attorney General's Office) for Defendant Sondervan did not previously raise this issue before is troubling. In any event, the Commissioner of the Division of Correction had actual notice of the Amended Complaint and of the fact that Mr. Simms sued the Commissioner in his official capacity only. Thus, the current commissioner should be substituted for Defendant Sondervan in this case.

## IV.  CONCLUSION

For the reasons set forth above, the Defendants' Motions should be denied and the current Commissioner of the Division of Correction should be substituted for Defendant Sondervan in this case. Mr. Simms, the plaintiff in this case, requests oral argument on the Defendants' Motions.

    /s/ Colleen M. Mallon
Colleen M. Mallon (#26967)
Heather Deans Foley (#25829)
Venable LLP
1800 Mercantile Bank & Trust Bldg.
Two Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

*Attorneys for Plaintiff Derek L. Simms*