IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEREK L. SIMMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. WMN-02-3276 |
| ISAIAS TESSEMA, MD., ET AL., | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY TO PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, former Commissioner William Sondervan and Warden Jon P. Galley, by their attorneys, J. Joseph Curran, Jr., Attorney General of Maryland, and Stephanie Lane-Weber, Assistant Attorney General, reply to Plaintiff's Opposition to their dispositive motion, and state:

**I.   Defendant Warden Jon Galley was Not Deliberately Indifferent to Plaintiff's Medical Needs**.

Proclaiming that Defendant Warden Galley violated his constitutional rights as to medical care, Mr. Simms states in a conclusory fashion that Warden Galley has known since as early as 2000 about his "perianal Crohn's disease and pain related thereto and [he has] ignored my continued complaints of pain and inadequate treatment." Plaintiff's Declaration, Exhibit 3 to Plaintiff's Opposition. Likewise, Plaintiff asserts in effect that his constant complaints about the medical care and his characterization of the medical care as inadequate create a basis for

finding that Defendant Warden Galley was deliberately indifferent. In a novel twist not recognized by civil rights law, Plaintiff argues that because Warden Galley knew that Mr. Simms believed the care was inadequate that Warden Galley should have referred him to a specialist or seek a second medical opinion. Opposition at 26. These bald allegations are not sufficient to create a triable issue of fact. There is not a whit of evidence that Warden Galley was deliberately indifferent to Plaintiff's medical needs. Mr. Simms misconstrues both the law and the facts.

The subjective component of an Eighth Amendment claim related to denial of medical care requires a showing that the defendant acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).[1] This component is not satisfied. Deliberate indifference occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 692,

---

[1] State Defendants focus here on the subjective element of this 42 U.S.C. sec. 1983 action because that evidence is completely inadequate to hold Warden Galley for trial. The issue of the seriousness of Mr. Simms's Crohn's disease is a matter that is better addressed by the medical experts since the gravity of the illness appears to change over time. In any event, this suit presents at best a dispute between medical professionals about the delivery of medical care, not a constitutional claim. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)(medical negligence, gross negligence, even malpractice–and certainly mere disagreement between physicians–do not offend the federal constitution *vis-a-vis* state prisoners).

695 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000). As stated by the Fourth Circuit, "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mt. Ranier*, 238 F.3d 567, 576 (4th Cir. 2001)(allegations insufficient where officers used mace to subdue subject who was acting strangely and resisted attempts to take him to hospital, and where subject later died in hospital from heart trouble).

"A prison official is not liable if he 'knew the underlying facts but believed (albeit unreasonably) that the risk to which the facts gave rise was unsubstantial or nonexistent.'" *Johnson,* 145 F.3d at 167, *quoting Farmer*, 511 U.S. 844. "[G]eneral knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between these general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168. *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir.), *cert. denied*, 522 U.S. 913 (1997) ("A claim of deliberate indifference ... implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Hindsight is not enough. "The law cannot demand that officers be mind readers." *Grayson v. Peed*, 195 F.3d at 695.

It is likewise not enough to allege in a conclusory way that officers acted with deliberate indifference, acted maliciously or wantonly. "The presence ... of a few

conclusory terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference." *Young*, 238 F.3d at 578. Expert testimony that the prisoner's medical care was grossly inadequate is not enough, in and of itself, to support an inference that a defendant not only should have perceived a risk but in fact did so, in a case where other facts and circumstances do not create such an inference. *Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999)(experts' affidavits as to what a reasonable psychiatrist should have known did not create a jury question as to what the defendant actually did know)  Here, there is no evidence that Warden Galley was deliberately indifferent to Plaintiff's care.  Warden Galley was entitled to rely upon the  private health care contractor to provide Plaintiff with medical care. Defendant Warden Galley was presented with no valid reason to doubt that the medical care was not sufficient.  And, most significantly, there is no evidence that Warden Galley knew of and disregarded an excessive risk of harm to Mr. Simms.  These facts leave no doubt that Warden Galley is entitled to summary judgement.

**II.     Plaintiff has Not Exhausted his Administrative Remedies Against Defendants Galley and Sondervan.**

Plaintiff has not exhausted his administrative remedies against Defendants Galley and Sondervan and his claims must, therefore, be dismissed.  Any review of the Declaration of Marvin Robbins, Executive Director of the Inmate Grievance Office

(IGO), Exhibit 4[2], and the pertinent Administrative Remedy Procedure (ARP) documents, Exhibit 4 (A-G) emphatically demonstrates that Mr. Simms's administrative complaints were expressly directed against the private health care contractor, mainly Dr. Tessema or its employees, and not Defendant Galley or Defendant Sondervan.  In addition, any review of these ARPs wholly deflates Mr. Simms's self-serving opinion that the "ARP investigative process is a facade insofar as medical complaints against the Medical Defendants at WCI are concerned." Plaintiff's Opposition at 27.  To the contrary, on four occasions in response to the seven medical ARPs, the claims were found to be meritorious at least in part and prison officials directed that corrective action be put into effect.

Executive Director Robbins avers that since 1999 to June 8, 2004, the IGO received 16 grievances from Mr. Simms, seven of which related to medical treatment for his anal/rectal problems.  Exhibit 4-2 at para. 10.  Each of the grievances was dismissed because each was brought against the WCI medical department, its employees, or Dr. Tessema.[3]  In responding to Mr. Simms about the grievances, the IGO wrote:

---

[2]The Defendants' exhibits discussed in this Reply are attached for ease of reference.

[3]In one case, the complaint originates against a nurse who drew blood, Exhibit 4(D)(2), continues to the Commissioner's level, Exhibit 4(D)(6) and at the IGO level adds for the first time unnamed prison officials who purportedly "demand that I allow this nurse Stacy to draw blood with her personal evil towards me. . ." Exhibit 4-D. Neither Defendant Sondervan nor Defendant Galley is named as a person responsible for the alleged grievance.

> ...I must advise you that the jurisdiction of this agency is limited to complaints against officials and employees of the Division of Correction and Patuxent Institution. As you know, medical services for State prisoners are provided by a private health-care contractor and its employees. We do not have jurisdiction over any complaints which you may have against them.

Exhibits 4-A (6); 4 B (2); 4 C (4); 4 D (5); 4 E (5); 4 F (3); 4 G (6). Defendant Galley and Defendant Sondervan were not named in any of the seven grievances. Accordingly, to maintain that Plaintiff exhausted his administrative remedies against Defendants Galley and Sondervan is meritless.

Equally significant, the grievances underscore that the ARP process works to address inmates' concerns. Exhibit 4.[4] In almost half of the seven medical grievances, relief was obtained by Plaintiff. For example, when Mr. Simms complained that his pain medication was inadequate, the medical contractor was directed by the Commissioner's office "to hold a patient care conference that is to include a discussion with you of the chronic nature of your rectal discomfort, the potential that you will never be 100% free of discomfort, and a plan to promote your comfort and to provide you timely medically necessary services for your legitimate

---

[4] ARP 0642-02/IGO 20020677 concerns Mr. Simms's allegations against Dr. Tessema and the inmate's view that medication inhibits his passing urine. Exhibit 4-A (1-5). ARP 0978-03/IGO 20040478 pertains to Dr. Tessema and the inmate's complaint of pain. Exhibit 4B. ARP 117303/IGO 200440479 requests relief about Mr. Simms's sitz bath and his view that Dr. Tessema and WCI medical staff make false allegations about the bath. Exhibit 4-C, 4C (1-2, 4). ARP 121703/IGO 20040480 concerns drawing blood by nurse Stacy. Exhibit 4-D. ARP 124103/IGO 20040481 presents a medication issue with Dr. Tessema. Exhibit 4-E. ARP 006004/IGO 20040490 revolves around Dr. Tessema and the sitz bath. Exhibit 4F. ARP 1356-03/IGO 20040556 concerns eye care by Dr. Tessema. Exhibit G.

health care needs." Exhibit 4 B (1).

Similarly, when Mr. Simms alleged that he refused to cooperate in having his blood taken because the nurse did not use universal precautions, the Commissioner's office investigated and indicated that the medical contractor acted to have the nurse review information about Universal Precautions and Bloodbourne Pathogens. Also, the medical contractor was "instructed to submit a corrective action plan to the Office of Health stating how they will educate their staff in the use of refusal form and to prepare/deliver education to nursing staff on 6-mercaptopurine to include what action is to be taken immediately when an inmate refuses to allow his blood to be drawn." Exhibit 4 D (1).

And Warden Galley found that one of Mr. Simms's medication complaints was meritorious in part. Investigation showed that Secure Pharmacy Plus issued the medication in error to Plaintiff since it had been prescribed for another inmate. A telephone conference ensued with the pharmacy, to discuss preventative measures. It was also determined that Plaintiff had received his original medication. Exhibit 4 E (2). Mr. Simms appealed, maintaining in part that he had not received the original medication. Upon review, the Commissioner's office determined that there was no documentation to support that Mr. Simms had received the medication. Accordingly, the medical care contractor was

> instructed to review its medication dispensing and administration policies and procedures and to submit a corrective action plan within 15 working days of notification of the finding by the Office of Inmate Health

such that all medication orders written by a clinician are transcribed in a timely manner, and the administration documented correctly."

Exhibit 4 E (1).

The requirement for a prisoner to exhaust administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). This important statutory predicate to filing suit helps prevent frivolous law suits and provides prisons with the opportunity to address concerns at the earliest opportunity at an institutional level. *McCoy v.* Goord, 255 F. Supp. 2d 233, 248 (S. D. N.Y. 2003), *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003)  Also beautifully illustrating the utility of the administrative remedy process is the fact that Mr. Simms has brought many, many ARPs and the results were likely satisfactory to him:  Mr. Simms did not appeal the vast majority of his ARPs to the IGO.  Exhibit 3, Answer to Interrogatory 3 (Plaintiff brought 93 ARPs from February 1, 1998 to December 17, 2003); Exhibit 4-2 (since 1999 Simms filed 16 grievances with the IGO).

What is more, merely because an inmate has related claims does not mean that exhausting one claim is tantamount to exhausting the other claim. In related claims, there is no excuse for failing to expressly describe the conduct which the inmate finds offensive.  Thus, in a grievance where the inmate does not name a particular officer or provide a description of the unnamed officer's purportedly improper conduct, the claim should be dismissed. In *Thomas v. Woolum*, an inmate filed a civil rights action against an officer for excessive force and against several

officers for failure to protect him from the assaulting officer. The inmate filed an administrative grievance against the alleged assailant, but did not mention the three officers who stood by during the incident or file a grievance against them. In dismissing the failure to protect claim, the Sixth Circuit held that the inmate's failure to complain by way of administrative remedy about the three officers' failure to protect deprived the prison of a chance to take corrective action and required that the suit be dismissed for failure to exhaust administrative remedies. *Thomas v. Woolum*, 337 F.3d at 735. See also *McCoy v. Goord* (all claims dismissed for failure to exhaust, treating alleged inadequate medical care by medical providers and alleged failure to provide medical care by supervisory prison officials as separate claims, requiring separate grievances). This Court should find that Mr. Simms did not exhaust administrative remedies against Defendants Galley and Sondervan.

### III. There is No Reason to Substitute the Former Commissioner for the Present Commissioner.

Mr. Simms seems to contend that he is entitled to substitute as a party the former Commissioner for the present Commissioner because he wants a "medical" order to require that he maintain a single cell so that he may take a sitz bath in private. No sufficient reason supports this request. It would be extraordinary departure from the law for this Court to order that Mr. Simms be given a single cell for that purported reason and would represent an extraordinary intervention into the day-to-day management of a state prison facility. Such an unprecedented injunction

is simply not warranted. *Taylor v. Freeman*, 34 F.3d 266, 268-69 (4th Cir. 1994). Moreover, there is no adequate showing that Mr. Simms's ability to take the sitz bath in his cell will be impaired. Indeed, Mr. Simms has been housed at WCI in a single cell for over 3 years, since September 3, 1991. Exhibit 3, Answer to Interrogatory No. 10. This record does not support the relief that Mr. Simms requests. *Lewis v. Casey*, 518 U.S. 343, 362 (1996)(injunctive relief must be narrowly tailored to actual constitutional violations and a court that fashions remedies outside of these strict parameters commits reversible error). Because this Court should not grant such an injunction, there is no need to substitute parties.

For these reasons, Defendants Warden Galley and former Commissioner Sondervan ask this Court to grant them summary judgment.

Respectfully submitted,

_____//s//_____
STEPHANIE LANE-WEBER
Assistant Attorney General
Trial Bar No. 00023

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6340 (Telephone)
(410) 576-6880 (Telefax)

Attorneys for Defendants
Warden Jon Galley and former
Commissioner William Sondervan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1 day of August, 2004, a copy of the foregoing Reply to Plaintiff's Opposition to State Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Exhibits were e-filed to:

Colleen M. Mallon, Esquire
Venable, Baetjer & Howard LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201

Donald Crawford, Esquire
Godard, West, Adelman, Sheff & Smith
200-A Monroe Street, Suite 310
Rockville, Maryland  20850


_____//s//_____
STEPHANIE LANE-WEBER
Assistant Attorney General

.

G:\LANEWEBS\WPDATA\SIMMS\Pleadings\Replytoopposition.wpd