IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEREK L. SIMMS, #266549 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: WMN-02-3276 |
| | * | |
| DR. ISAIAS TESSEMA, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MEDICAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION
FOR SUMMARY JUDGMENT

Isaias Tessema, M.D. and Denise VanMeter, R.N., ("medical defendants") by and through his undersigned counsel of record, respectfully reply to Plaintiff's opposition to their Motion for Summary Judgment.

**1.    The Medical Defendants, Isaias Tessema M.D. and Denise VanMeter, R.N. were not indifferent to Plaintiff's medical needs.**

Plaintiff's argument is that the medical defendants deliberate indifference can be inferred from their failure to provide plaintiff a medical order for a single cell, provide a properly fitting sitz bath and sufficiently hot water for its use, provide the pain medications desired by plaintiff and provide plaintiff with sufficient outside consultations.  This argument fails on three grounds: even if medical malpractice is assumed, which the medical defendants vigorously deny, it does not demonstrate a deliberate indifference to plaintiff's medical needs; a disagreement between an inmate and a physician over the inmate's proper medical care does not state a § 1983 claim unless exceptional circumstances are present and none are; and the evidence clearly

demonstrates that neither medical defendant had the state of mind whereby they were disregarding plaintiff's Simms medical condition thereby creating a substantial risk of injury to plaintiff, in fact, plaintiff's peri-anal Crohn's disease remains unchanged.

Despite Mr. Simm's assertion that he has suffered from peri-anal Crohn's disease since he was eight years old his medical record begins with symptomatic emergency room treatment in 1992 that may or may not have been for peri-anal Crohn's disease. It is not until Plaintiff is incarcerated at Western Correctional Institution in late 1998 and 1999 that medical testing and consultations are initiated to define the exact extent of Mr. Simms' Crohn's disease. These tests defined Mr. Simms' Crohn's disease as peri-anal Crohn's disease, a form localized to the anus only. No Crohn's disease was found in any other part of the digestive tract. All the experts including Plaintiff's agree (see Dr. Lee's deposition pages 7, 14 and 15.) that the testing done again in 2003 and 2004 confirm that Mr. Simms' has peri-anal Crohn's disease only. This is a chronic disease without a cure, best treated with medications and generally does not have pain associated with it unless there are active fistula. Frankly Mr. Simms wants a "magic bullet" in the form of surgery (see Sick Call request of 5/5/99, "Cut whatever it is out."). Because of multiple surgeries (five prior to 1996 reported to UMMS see 8/27/03 GI Consult and four more thereafter, I&Ds 3/97, 3/98, 10/98 and 1/99 that included a fistulotomy) and the localized nature of his chronic disease Dr. Briggs (see Progress Note of 2/24/00) that his chronic peri-anal Crohn's disease advised Mr. Simms that he was best treated with symptomatic relief rather that surgery. Mr. Simms does not appear to accept what he was told in a patient care consultation. In that same note Dr. Briggs noted Mr. Simms exaggerated response to pain and his demand for

narcotic medication.

Over the past four years Mr. Simms has presented in his Sick Call requests a broad array of symptoms that can not be associated with his peri-anal Crohn's disease, such as stomach pain, sickly feelings, abdominal pain, stomach pain, cramps, diarrhea, vomiting, and nausea. His complaints of rectal pain are usually accompanied with complaints of swelling, drainage, bleeding, and pus, but his physical examinations usually found no drainage or swelling or any other objective finding of fistula or active peri-anal Crohn's disease. The objective finding upon examination do not match his subjective complaints.

Mr. Simms has been singled celled since September 3, 2001 a decision made by the Division of Correction, the appropriate forum for deciding inmate housing issues. The request for a single cell was a moot issue when this action was filed on October 7, 2002, and was clearly moot when Plaintiff's Amended Complaint was filed over two years after he was placed in a single cell. At best, Plaintiff is requesting this Court to either enjoin the correctional officials from denying him future single cell status or requesting this Court to order the medical defendants to write a prescription for single cell status, a prescription he is not entitled to see Dr. Tessema's deposition pages 95 to 97. Given that the issue is moot this request for anticipatory injunctive relief is inappropriate for this Court to consider or grant, and the medical defendants adopt and include by reference the arguments of the correctional defendants found on pages 9 and 10 of their Reply.

Sitz baths have been recommended by practically every medical consultant who has seen

Mr. Simms save his own expert, and she does not recommend them because they only relieve symptoms (Dr. Lee's deposition at page 28).  There can be no argument that sitz baths were prescribed, and Mr. Simms was provided with sitz bath equipment and on at least one occasion he rejected said equipment.  Despite Mr. Simms assertions about complaints to the medical defendants as to low water temperature and that the basin provided for the baths did not fit into his commode (Declaration 16), not one of his Sick Call Request forms nor any Progress Note nor any Outside Consultant note makes mention or either of this bald assertions, despite complaining about all types of medical conditions.  The only written document mentioning either issue was an ARP filed on October 24, 2003 and neither medical defendant participate in the ARP process, see Tessema Deposition pages 105 and 106, and VanMeter Deposition page 60.  Said ARP was found without merit.  The medical defendants have no control over the hot water supply at WCI, see Galley Deposition pages 97 and 98.  Both medical defendants were following consultant recommendations or Physician's Orders, provided Mr. Simms with the necessary equipment and neither are clairvoyant (Mr. Simms never voiced these concerns to them, see Dr. Tessema's Deposition pages 89 to 94, and Ms. VanMeter's pages 49 to 52) and therefore provided the means for symptomatic relief that Mr. Simms own actions in refusing sitz baths or failing to use them simply prevented relief from his alleged pain symptoms.  Even Plaintiff's own expert acknowledged symptomatic pain relief provided by sitz baths.  One must ask the question, "How much of Mr. Simms pain complaints could have been relieved by proper and continuing use of the sitz baths?, and compliance with prescribed medication regimens?"  Neither medical

defendant evidence any deliberate indifference to Plaintiff with regards to his prescribed sitz baths.

Mr. Simms assertion that he was routinely given narcotic pain medications between late 1997 and 2000 does not stand scrutiny, and, in any event, is irrelevant to the treatment provided by Dr. Tessema because that period was one of active fistula, uncontrolled peri-anal Crohn's disease and multiple surgeries. In fact, there are periods when he receives no pain medication November 97, March 98, June 98, July 98, September 98 for example, and when periods when opiate analgesics were prescribed but they were prescribed for short durations (two to seven days) and for finite periods when Mr. Simms had active fistula, or for before and after surgical procedures for abscesses or fistula.

In addition Mr. Simms was prescribed two antidepressants with sedative effects, Elivil and Paxil for extended periods in 2000, 2001 and 2002. From 2000 to date other non-narcotic analgesics have been prescribed or given to Mr. Simms in response to sick call requests complaining of pain and in most cases they have been prescribed for thirty days, this despite the fact that no objective finding supporting his alleged claims of pain were found. The medical defendants did not ignore complaints of rectal pain but adjusted prescribed medications, and provided other medications for relief of symptoms, such as Lydex cream, Bactrim cream and Proctofoam. The one example cited by Plaintiff concerning Ms. VanMeter denial of pain medication, Plaintiff's deposition Exhibit 8 is a sick call request dated 3/8/99 signed by Ms. VanMeter on 3/13/99 when Mr. Simms was in the Infirmary receiving Tylenol 3 for 7 days. Mr.

5

Simms simply disagrees with the course of prescriptions provided for the alleged pain from his well controlled peri-anal Crohn's disease.  That disagreement does not amount to or state a claim for deliberate indifference, see Wright v. Collins, 766 F.2d 841(1985). Neither medical defendant demonstrated the "obduracy and wantonness" required for deliberate indifference, see Whitley v. Albers, 475 U.S. 313, 319.  But even if the course of prescribed analgesics amounted to medical malpractice, it does not evidence a deliberate indifference to Mr. Simms medical needs, see Farmer v. Brennan, 511 U.S. 825 (1994).  Both medical defendants were providing Mr. Simms medical treatment for his myriad of complaints, and clearly neither defendant had a culpable state of mind nor any actions by either that can be construed as "an unnecessary and wanton infliction of pain" Estelle v. Gamble, 429 U.S. 25,105.  Additionally neither medical defendant knew or inferred or believed that any risk of serious harm existed for Mr. Simms, see Farmer at 837 and 844 and Johnson v. Quinones, 145 F.3d at 167.

Finally one thing is absolutely clear for Mr. Simms medical record and consultant reports, and that is that Mr. Simms peri-anal Crohn's disease remains unchanged and there is no evidence Crohn's disease is anywhere else in Mr. Simms' digestive tract from 1999 to date. It was not until late 1998 and 1999 that any medical effort was undertaken to determine the extent of Mr. Simms' Crohn's disease. All of the testing and consulting determined that he had chronic peri-anal Crohn's disease, and that diagnosis remains the same today. The experts for both Mr. Simms and the medical defendants agree that Mr. Simms has peri-anal Crohn's disease only. For the period from 2000 to date when Dr. Tessema was Mr. Simms treating physician his peri-anal

6

Crohn's disease has either been "well controlled" as described by Dr. Weinstein or in remission as described by Dr. Tessema, but in any event his disease is no different today from his diagnosis in 1999. What is different during the period from 2000 to date is that no new fistula appeared and no need for surgical intervention developed. One must ask the question, "Would any degree of consultations have changed the basis course of Mr. Simms chronic disease?" The answer to that question is a resounding no. Whether a physician is the treating physician, such as Dr. Tessema, or an academic consulting physician, such as Dr. Lee or a practicing specialist, such as Dr. Weinstein, the real test of appropriate medical treatment is what happened to the chronic condition during your watch. During Dr. Tessema's watch the objective evidence is that Mr. Simms chronic peri-anal Crohn's disease was stable, well controlled with medications and required no surgical intervention. That did not occurred in the four years prior to 2000 when

multiple surgical interventions occurred and Mr. Simms peri-anal Crohn's disease was uncontrolled. While physicians and specialist may differ on the need and timing for specialist consultations, the alleged failure to send Mr. Simms to a specialist is, at best, medical malpractice, which Dr. Tessema vigorously denies.  Why the second round of consultations occurred is irrelevant, but what that round of consultations demonstrates is that the treatment plan recommended by prior consultants and ordered by Dr. Tessema for Mr. Simms chronic peri-anal Crohn's disease worked.   Finally attached to the Notice of Lengthy Exhibits is Exhibit D are copies of the University of Maryland Medical System consultations no part of the previous lengthy exhibit filing.  These reports speak for themselves, and Mr. Simms declaration ¶ 11

7

simply does not reflect the discharge orders (sitz baths) for his visit to the UMMS on 2/3/04 and at best, may evidence confusion with the pain management while at UMMS, and at worst, evidences a behavior seeking opiate based analgesic.  The same is true for the UMMS 7/20/04 consultation, see Simms declaration ¶ 12, which says, " 7. Consider Vicodin for rectal pain prn (as needed)".   Given Mr. Simms declaration one must seriously consider the possibility of drug seeking behavior by a former cocaine user, see Dorchester General Hospital Emergency Room visit note of 10/10/96, Exhibit F in the Notice of Filing Lengthy Exhibits dated 8/13/04, particularly when one examines his ARPs that request transfer to other facilities where Dr. Tessema's medical judgment that narcotic pain medications are not warranted for Mr. Simms well-controlled peri-anal Crohn's disease, Tessema deposition page 72, would not control.   Dr. Tessema followed Mr. Simms closely creating a type of chronic care clinic for him where none

exists, see Tessema deposition pages 123 and 124, and his actions do not evidence a deliberate indifference to Mr. Simms medical needs but rather evidence a constant evaluation with periodic changes in the medication which successfully treated and controlled his chronic condition.

Mr. Simms peri-anal Crohn's disease meets the objective prong of the deliberate indifference standard, but the objective evidence clearly demonstrates that neither medical defendant had the state of mind whereby they were disregarding Mr. Simms medical condition thereby creating a substantial risk of injury to Mr. Simms.  The evidence shows just the opposite.  They were constantly concerned about his complaints and treatment and during the entire period his per-anal Crohn's disease was well controlled and no risk to his health occurred.

8

Neither medical defendant believed that the treatment plan for Mr. Simms any risk of serious harm, see <u>Farmer</u>, and <u>Johnson</u> cited above.

 2.	**The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claim**

While Plaintiff's complaint is styled as an action to recover damages due alleged civil rights violations pursuant to 42 U.S.C. §1983, presumably impinging upon his Eighth Amendment or Due Process rights, a fair reading of plaintiff's complaint reveals that plaintiff is attempting to plead, at best, a claim of medical malpractice.  The Maryland Health Care Malpractice Claims Statute ("the Arbitration Statute"), Md. Cts. & Jud. Proc. Code Ann. §§ 3-2A-01 to 3-2A-09, provides that all claims for damage due to a medical injury alleging damages in excess of $25,000 are subject to the Arbitration Statute and must be filed initially with the Health Claims Arbitration Office.  Md.

Cts. & Jud. Proc. Code Ann. § 3-2A-02(a) and 3-2A-04(a).

The Arbitration Statute "creates `a condition precedent to the institution of a court action . . . .'" Oxtoby v. McGowen, 294 Md. 83, 91, 447 A.2d 860 (1982) (quoting Attorney General v. Johnson, 282 Md. 274, 283-84, 385 A.2d 57, app. dismissed, 439 U.S. 805 (1978)). See also Davison v. Sinai Hospital of Baltimore, 462 F. Supp. 778 (D.Md. 1978), aff'd, 617 F.2d 361 (4th Cir. 1980); Tranen v. Aziz, 304 Md. 605, 500 A.2d 636, 639 (1985). Medical malpractice claims that have not first been filed in the Health Claims Arbitration Office must be dismissed for failure to comply with the Arbitration Statute. Davison v. Sinai Hospital of Baltimore, 462 F. Supp. 778 (D.Md. 1978), aff'd, 617 F.2d 361 (4th Cir. 1980); Oxtoby, 447 A.2d at 865; Schwartz v. Lilly, 53 Md. App. 318, 452 A.2d 1302, 1305 (1982).

9

Although styled a §1983 action, it is a medical malpractice action because the definition of "medical injury" found in Courts and Judicial Proceedings Article of the Annotated Code of Maryland, §§ 3-2A-01 et seq., defines a medical injury as any "injury arising or resulting from the rendering or failure to render health care."   The Plaintiff's action is a garden variety medical malpractice action despite the allegations that the medical defendants showed a deliberate indifference to a serious medical problem pursuant to §1983 action. Maryland law is clear that Plaintiff cannot bypass the arbitration process by shaping a medical claim as a §1983 action, see Long v. Rothbaum, 68 Md.App. 569, 514 A.2d 1223 (Md.App. 1986).   Plaintiff is simply attempting to do what our Court of Appeals decided against, i.e. avoiding carefully crafted

statutory requirements that medical injuries must be brought before the Health Claims Arbitration Office before it can be heard in court.

In sum, the alleged Eighth Amendment claim that plaintiff was subjected to negligence or medical malpractice must be dismissed as a matter of law for failing to state a claim upon which relief may be granted.  Even if plaintiff could state a claim for negligence or some other tort, this Court still must dismiss his Complaint with prejudice.  The Supreme Court has repeatedly cautioned federal and state courts against enlarging the "commodious" contours of § 1983 of the Fourteenth Amendment so as to displace state law.  *See, e.g.,* Daniels v. Williams, 474 U.S. 326, 332 (1986); Paul v. Davis, 424 U.S. 693, 701 (1976).  Thus, the mere fact that the alleged conduct was performed by a state actor does not support its characterization as a constitutional wrong.  Daniels, 474 U.S. at 530-32.  Rather, it is grievous and flagrant governmental abuse which demands

10

a constitutional response.  Davis v. Bucher, 853 F.2d 718, 721 (9th Cir. 1988); *see also* Gardner v. Benton, 452 F. Supp. 170, 173 (E.D. Okla. 1977).  At most, plaintiff's allegations attempt to state a common law negligence claim that does not confer federal question jurisdiction upon this Court.  Since the alleged medical malpractice tort arose in Maryland it would be subject to the provisions of the Maryland Health Care Malpractice Claims Statute, Md. Cts. & Jud. Proc. Code Ann. §§ 3-2A-01 t0 3-2A-09.

**CONCLUSION**

Based on the above, Isaias Tessema, M.D. and Denise VanMeter, R.N.,  respectfully request that this Court to enter summary judgment in their favor.

Respectfully submitted,

ADELMAN, SHEFF & SMITH, LLC.

By: _____/s/_____
    Donald J. Crawford,  #11290
    200-A Monroe Street, Suite 310
    Rockville, MD 20850
    (301) 340-1140
Attorneys for Isaias Tessema, M.D. and Denise VanMeter, R.N.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Medical Defendants' Reply to Plaintiff's Opposition to their Motion for Summary Judgment and Notice of Filing Lengthy Exhibits were electronically filed mailed, postage prepaid, on this 13th day of August, 2004, to: Colleen M. Mallon, Esq., Venable LLP, two Hopkins Plaza, Suite 1800, Baltimore, MD 21201, and to Stephanie Lane-Weber, Esq., Assistant Attorney General, 200 St. Paul Place, 19th Floor, Baltimore, MD 21202.

        _____/s/_____
        Donald J. Crawford, # 11290

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEREK L. SIMMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CASE No.: 1:02-CV-01783 WMN |
| v. | * | |
| | * | |
| ISAIAS TESSEMA, M.D., *et al*. | * | |
| | * | |
| Defendants | * | |

**************************

NOTICE OF FILING LENGTHY EXHIBITS

Defendants, Isaias Tessema, M.D. and Denise VanMeter, R.N (collectively "medical defendants"), by and through their attorneys, Donald J. Crawford, and Adelman, Sheff & Smith hereby notify all parties to the above captioned litigation that on August 13, 2004 the following exhibits originals and two copies, were filed with the United States District Court. The following documents and exhibits were filed: Exhibit A-Medication Administration Reports from January 1, 2000 to June 2004; Exhibit B-Sick Call Requests forms with referred to Progress Notes included form January 1, 2000 to July 24, 2004; Exhibit C-Progress Notes from January 6, 2000 to July 9, 2004; Exhibit D-University of Maryland Medical System Reports of 2/6/04, 2/13/04, 3/5/03, 6/9/04 and 7/20/04; Exhibit E-Medical Assignment forms dated 5/28/04 and Receipt Forms dated 5/28/04, and Exhibit F-Dorchester General Hospital Report of 10/10/96.

The undersigned counsel hereby certifies that on August 13, 2004, I sent a copy of this notice along with all documents and exhibits by first class, postage prepaid mail to the following

counsel: Colleen M. Mallon, Esquire, Venable LLP, two Hopkins Plaza, Suite 1800, Baltimore, MD 21201, and to Stephanie Lane-Weber, Esquire, Assistant Attorney General, 200 St. Paul Place, 19th Floor, Baltimore, MD 21202.

ADELMAN, SHEFF & SMITH, LLC.


By: _____/s/_____
Donald J. Crawford, #11290
200-A Monroe Street
Suite 310
Rockville, Maryland 20850
(301) 340-1140

Attorneys for medical Defendants, Isaias Tessema, M.D. and Denise VanMeter, R.N.