IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK L. SIMMS                          :
                                        :
v.                                      :   Civil No. WMN-02-3276
                                        :
ISAIAS TESSEMA, M.D., <u>et al.</u>      :
                                        :

**<u>MEMORANDUM</u>**

Before the Court are Defendants' Motions for Summary Judgment.[1]  Papers No. 45, 46.  The motion is briefed and ripe for decision.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion of Defendants Commissioner of Corrections Sondervan and Warden Galley (the "Correctional Defendants") should be granted and the motion of Defendants Dr. Tessema and Nurse VanMeter (the "Medical Defendants") should be denied.

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Plaintiff has been incarcerated in Maryland's Western Correctional Institution ("WCI") since 1997.  He suffers from peri-anal Crohn's disease.  The disease is incurable but its

_____

[1]  Also before the Court is Plaintiff's Motion To Strike the Medical Defendants' Reply Brief.  Paper 55.  The Court denies the Motion as moot.  It did not consider the disputed arguments or exhibits in reaching its decision.  The disputed issues may be raised in an appropriate motion <u>in limine</u>.

effects often can be ameliorated by pain medication and sitz baths. WCI's housing director placed Plaintiff in a single cell in September 2001 to facilitate his use of the sitz bath. From late 1997 through January 2000, Plaintiff was sent to see off-site specialists regarding his Crohn's disease on at least nine separate occasions.

In December 2000, Defendant Tessema assumed duties as the medical director at WCI. From January 2000 (almost a year before Dr. Tessema began work at WCI) until August 2003, Plaintiff received no off-site or specialist treatment for his Crohn's disease. After initiating this lawsuit, Plaintiff received at least ten off-site consultations from August 2003 to the present.

Plaintiff also alleges that he is being denied necessary pain medication by Medical Defendants and is unable to comply with his prescribed sitz bath treatments. He claims that the water in his cell is too cool to be effective and that he has been involuntarily dispossessed of his sitz bath since July 9, 2004.

On October 7, 2002, Plaintiff filed his original complaint pro se alleging that the Medical Defendants treating him at WCI, along with the Warden Galley, were deliberately indifferent to several of his serious medical needs in

violation of his federal constitutional protection from "cruel and unusual punishments." Paper No. 1. On April 29, 2003, this court denied Medical Defendants' motion for summary judgment with respect to the treatment of Plaintiff's Crohn's disease while granting them summary judgment with respect to the remainder of Plaintiff's medical claims. Paper No. 19.

Following the appointment of counsel, Plaintiff filed his "Second Amended Complaint"[2] on September 22, 2003. Paper No. 29. Plaintiff maintains his allegation of deliberate indifference against the Medical Defendants and the warden and seeks injunctive relief against all Defendants. In their motions for summary judgment, Defendants assert that their alleged conduct does not meet the rigorous legal standard of deliberate indifference.

## II.  LEGAL STANDARD

"Summary judgement should be granted in those cases where it is perfectly clear that no genuine issue of material fact remains unsolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Community Fire Co. of Rising Sun, 6 F.3d 211, 214 (4th Cir. 1993) (citations omitted). "By its very terms, this standard

---

[2] While true that the September 22, 2003 filing is the second complaint on the docket, it properly should be titled the "(First) Amended Complaint."

3

provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247-48 (1986) (emphasis in original).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment, a court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor." <u>Estate of Kimmell v. Seven Up Bottling Co.</u>, 993 F.2d 410, 412 (4th Cir. 1993) (citation omitted).

**III.  DISCUSSION:**

In order to state a constitutional claim for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to a deliberate indifference to his serious medical needs.  See <u>Estelle v. Gamble</u>, 429 U.S. 97,

4

106 (1976).  In essence, the treatment rendered must be so
grossly incompetent or inadequate as to shock the conscience
or to be intolerable to fundamental fairness.  Miltier v.
Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).
"Deliberate indifference may be demonstrated by either actual
intent or reckless disregard."  Id.  Reckless disregard occurs
when a defendant "knows of and disregards an excessive risk to
inmate health or safety; the [defendant] must both be aware of
facts from which the inference could be drawn that a
substantial risk of serious harm exists and he must also draw
the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).
Thus, a health care provider must have actual knowledge of a
serious condition, not just knowledge of the symptoms.
Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).  Mere
negligence or malpractice does not rise to a constitutional
level.  Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975);
Donlan v. Smith, 662 F. Supp. 352, 361 (D. Md. 1986).  A two
part inquiry is required.  The prisoner must prove "(1) that
objectively the deprivation of a basic human need was
'sufficiently serious,' and (2) that subjectively the prison
official acted with a 'sufficiently culpable state of mind.'"
Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting
Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

## A.  The Correctional Defendants

The pleadings and exhibits, viewed in the light most favorable to the plaintiff, do not establish a set of facts from which a reasonable factfinder could conclude that Commissioner Sondervan or Warden Galley were deliberately indifferent to Mr. Simms' medical needs.  They are entitled to summary judgment.

Plaintiff alleges that Correctional Defendants are liable under 42 U.S.C. § 1983 as "supervisory defendants [who] tacitly authorized or were indifferent to the prison physicians' constitutional violations."  Plaintiff's Opp. at 25 (quoting Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted)).  The Fourth Circuit stresses that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  Miltier, 896 F.2d at 854 (citation omitted).  Therefore, merely showing Medical Defendants' deliberate indifference would be insufficient to make Correctional Defendants liable under § 1983.  Id.  Plaintiff must show that the Correctional Defendants themselves were deliberately indifferent or tacitly

authorized the alleged constitutional violation.   Id.

A prison official does not violate a prisoner's constitutional rights where he reasonably relies on the evaluations and recommendations of the prison's medical staff. See Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998).  The Supreme Court stresses that prison officials charged with deliberate indifference are not liable where they 1) are unaware of facts indicating a substantial danger of a constitutional violation, 2) know the underlying facts but believe (albeit unsoundly) that the risk of a constitutional violation is insubstantial or nonexistent or 3) actually know of a substantial risk to inmate health but reasonably respond to the risk.  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

Plaintiff correctly notes that prison officials may not shield themselves from all liability for constitutional violations by deferring to the prison doctors' recommendations; however, Plaintiff has not provided a sufficient factual basis that would allow a reasonable factfinder to conclude that the Correctional Defendants should have suspected cruelty towards Plaintiff or that they were unreasonable in accepting the medical staff's recommendations.

The crux of Plaintiff's complaint is that he 1) is being

denied pain medication and hot water for his prescribed sitz
baths, 2) was denied consultation with off-site specialists
for 32 months, and 3) is in a single cell only at the
temporary mercy of the prison's housing director and not under
a medical order.  <u>See</u> Opp. at 3.

Plaintiff asserts that his complaints about his medical
care put Correctional Defendants on notice that his
constitutional rights were in jeopardy.  Specifically,
Plaintiff notified the medical staff of pain associated with
his Crohn's disease by submitting 44  "Sick Call Requests"
during the first 32 months (Dec. 2000 - Aug. 2003) that
Defendant Tessema worked as WCI's medical director.  During
this same period, Plaintiff had no off-site consultations with
specialists.

Correctional Defendants were on notice that Plaintiff had
myriad complaints regarding many aspects of his incarceration.
WCI prisoners formally initiate grievances by filing an
Administrative Remedy Procedure form ("ARP").  If denied,
prisoners may appeal to the Commissioner's office.  If denied
there, prisoners may appeal again to the Inmate Grievance
Office ("IGO").   <u>See</u> Galley Depo. at 56-62.  From February
1, 1998 through December 17, 2003, Plaintiff filed 93 ARPs.
Since 1999, the IGO has processed 16 grievances from Plaintiff

8

and dismissed 14 of them without a hearing.  Seven of the
dismissed complaints related to his Crohn's disease and
contained the allegation of "deliberate indifference" by the
medical staff.  Some of the others related to his adjustment
issues, threats by other inmates, access to educational
programs, and tampering with his food.  His original Complaint
in this Court also contained constitutional claims relating to
his breathing problems, his desire to have his arthritic left
knee surgically replaced, and his prostate and urinary
problems.  This Court dismissed those medical claims.  Paper
No. 19.

The facts show that Warden Galley responded reasonably to
Plaintiff's complaints.  He met with Dr. Tessema and the
medical staff several times to address Plaintiff's treatment
plan.  Warden Galley testified that he found Dr. Tessema to be
competent and his plan of treatment to be reasonable.  Galley
Depo. at 51-56, 79.  After Warden Galley met with the medical
staff to discuss Plaintiff's concerns, the off-site
consultations resumed in August 2003.  Warden Galley also
consulted with the prison's housing director about Plaintiff's
placement in a single cell.  Warden Galley did not disturb
Plaintiff's placement in the single cell despite learning that
Dr. Tessema did not believe it was medically necessary.

Plaintiff remains housed in a single cell.  Warden Galley
asserts that hot water in the prison cells and infirmary is
uniformly set to 120 degrees and cooled in the supply lines to
between 98 and 108 degrees.  Galley Depo. at 87-88, Galley
Inter. 11.  With discovery now complete, Plaintiff has not
developed his assertion that his water is not hot enough for a
sitz bath beyond repeating that he needed "hot water" and his
water was not hot.  Opp. at 24.

Because a supervisory prison official's reasonable
response to a known serious risk to prisoner health protects
that official from liability under 42 U.S.C. § 1983,
Correctional Defendants are not liable.  Farmer v. Brennan,
511 U.S. 825, 844 (1994).  Even if the Court were to assume
that Warden Galley had actual knowledge of a substantial risk
to Plaintiff's health, his reasonable response shields him
from liability.  Warden Galley knew that Plaintiff has filed
formal grievances over virtually every aspect of his
incarceration.  In response, he conferred with the medical
staff several times and also inquired about Plaintiff's
housing status.  He learned that Plaintiff was housed in a
desired single cell and did nothing to disturb that placement.
In August 2003, off-site specialist consultations resumed.
With no medical training or sufficient reason to believe that

the medical staff was violating the rights of prisoners, he reasonably deferred to the medical expertise of Dr. Tessema.

Commissioner Sondervan, far more remote from the proceedings at WCI than Warden Galley, is entitled to summary judgment as well. <u>See</u> <u>Miltier v. Beorn</u>, 896 F.2d 848, 855 (granting Corrections officials outside the prison summary judgment due to remoteness where Wardens inside the prison were entitled to summary judgment).

Because no reasonable factfinder, viewing the record in the light most favorable to Plaintiff, could conclude that the Correctional Defendants have been deliberately indifferent to or tacitly authorized violations of Plaintiff's constitutional rights, Defendants Sondervan and Galley are entitled to summary judgment.

## B.  The Medical Defendants

The limited constitutional liability for the violations of prisoners by medical staff under the "deliberate indifference" standard (<u>see</u> Discussion, <u>supra</u> ), does not vitiate the protections afforded the non-movant in summary judgment proceedings (<u>see</u> Legal Standard, <u>supra</u>).  The pleadings and exhibits, viewed in the light most favorable to the Plaintiff, establish a set of facts from which a reasonable factfinder could conclude that Dr. Tessema and

11

Nurse VanMeter were deliberately indifferent to Mr. Simms'
medical needs.  While the facts certainly do not establish
conclusively that any constitutional violations have occurred,
numerous omissions and inconsistencies preclude summary
adjudication for Medical Defendants.

The facts show that for more than three years (Jan. 2000
- Aug. 2003) Plaintiff received no off-site referrals for his
Crohn's disease, yet Plaintiff received extensive access to
off-site specialists before and after this time period.
Plaintiff has consistently complained of pain associated with
his Crohn's disease and alleges that Nurse VanMeter denied him
medicine on several occasions despite a nursing protocol that
calls for Tylenol to be dispensed.  Once off-site treatment
resumed, Plaintiff's prescription for narcotic pain medication
from the University of Maryland Medical System was not filled
by Dr. Tessema.  Although Dr. Tessema asserts that he
dispensed an equally effective substitute, he did not remember
what he used.  Tessema Depo. at 83.  In addition, Dr.
Tessema's testimony regarding whether he has stated that he
believes that Plaintiff is drug-seeking is flatly
inconsistent.  Compare Tessema Depo. at 62, with Tessema
Inter. 27.

Plaintiff also has alleged that he is unable to comply

with his prescribed sitz bath treatment because 1) he lacks
hot water, 2) the one issued to him does not fit on his
commode, and 3) he has been dispossessed of it since July 9,
2004.  Medical Defendants' vague response that Plaintiff is
non-compliant with his sitz baths and has not provided them
sufficient notice of his problems is inadequate to obtain
summary judgment.  While Dr. Tessema has testified that
hundreds of prisoners use sitz baths in their cells without
problems, Medical Defendants still have made no showing that
Plaintiff's sitz bath works in his cell, or that Plaintiff
even possesses a sitz bath any longer.[3]  Medical Defendants
also have not shown that Plaintiff has access to hot water or
that they communicated with Correctional Defendants about
Plaintiff's allegedly inadequate access to hot water.  As
health care providers, Medical Defendants do not complete a
prescribed treatment by merely issuing a sitz bath if
Plaintiff informs them that he is unable to comply with the

---

    [3]  The Court notes that in deposition, Dr. Tessema
testifies that "1,500 people use sitz bath in the whole
population" in apparent reference to the WCI prisoner
population that Warden Galley estimates at "about 1,912."
Tessema Depo. at 98.  Regardless of whether the 78% rate of
sitz bath usage among WCI prisoners was a misstatement or
misrecorded, Medical Defendants who seek summary judgment on a
deliberate indifference claim remain obligated to show some
response to a prisoner's complaint that he is unable to comply
with prescribed pain treatment for reasons beyond his control.

treatment due to circumstances beyond his control.

Medical Defendants have not shown that they were objectively and subjectively unaware of the risks to Plaintiff's constitutional rights so as to warrant summary judgment.  While it is true that the Supreme Court requires that liable Medical Defendants be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [] also draw the inference," the factfinder may find culpability by "inference from circumstantial evidence."  Farmer v. Brennan, 511 U.S. 825, 837, 842 (1994).  While the material facts regarding Plaintiff's claims remain vigorously disputed, circumstantial evidence exists to support the conclusion that Medical Defendants intentionally deprived Plaintiff of pain medication and specialist consultation for a period of years while also ignoring his inability to use his prescribed sitz bath. If proven at trial, these allegations could meet the lofty threshold of objective and subjective knowledge of a constitutional violation.

Medical Defendants also raise subject matter jurisdiction, Plaintiff's failure to exhaust administrative remedies, and statute of limitations defenses as grounds to defeat Plaintiff's claims.  Each argument lacks merit.

14

Subject Matter Jurisdiction:

Medical Defendants argue that this Court lacks subject matter jurisdiction because the matter is simply one of alleged medical malpractice and cannot be brought pursuant to 42 U.S.C. § 1983.  They argue that this dispute amounts to a mere difference of medical opinions and that Medical Defendants cannot be found to have the requisite level of knowledge to be deliberately indifferent.

The Supreme Court considers it elementary that the government is constitutionally obligated to provide basic medical care for prisoners and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 103-104 (1976) (internal citation omitted).  It unequivocally states that deliberate indifference to a prisoner's serious illness states a cause of action under § 1983.  Id. at 105.

As stated above, Plaintiff's allegations constitute a valid § 1983 claim conferring jurisdiction on this Court. While Medical Defendants emphatically disagree with Plaintiff's version of events, the factual bases of the claim, with all reasonable inferences drawn in Plaintiff's favor, certainly go beyond mere medical malpractice or differing

15

opinions; they comprise a constitutional violation.

Failure to exhaust remedies:

Medical Defendants contend that this Court should not
hear this § 1983 claim because Plaintiff has neither exhausted
his administrative remedies nor sufficiently plead exhaustion.
Medical Defendants direct the Court to <u>Booth v. Churner</u>, 532
U.S. 731 (2001), for the proposition that Plaintiff has failed
to exhaust his remedies as required by the Prison Litigation
Reform Act ("PLRA"), 42 U.S.C. 1997e(a).  <u>Booth</u> is easily
distinguishable because prisoner Booth filed an initial
administrative grievance but did not "go beyond the first
step, and never sought intermediate or final administrative
review . . . ."  <u>Id.</u> at 735.  Here, Plaintiff brought a
complaint specifically related to his Crohn's treatment from
the ARP stage up through the correctional system's third and
final level of administrative review, the IGO hearing, in
April 2002.  The Executive Director of the Inmate Grievance
Office, Marvin R. Robbins, issued a final dismissal of the
complaint in a letter dated May 28, 2002.  After receiving
notice of this final administrative dismissal, Plaintiff filed
suit in October 2002.  Plaintiff exhausted his administrative
remedies prior to filing his original complaint.  The pleading
is sufficient because paragraph 30 of the Amended Complaint

16

plainly states that "Plaintiff Simms has fully exhausted all administrative remedies . . . ."

Statute of Limitations:

Plaintiff's claim is not time barred because his cause of action for deliberate indifference accrued no earlier than January 2000 and he filed in October 2002. The Supreme Court holds "that § 1983 actions are best characterized as personal injury actions." <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985). State law governs "the length of the limitations period and closely related questions of tolling and application . . . ." <u>Id.</u> at 269. Personal injury claims in Maryland have a three-year statute of limitations. <u>See</u> Cts. & Jud. Proc. § 5-101. Therefore, Plaintiff has no limitations problem.

**IV. CONCLUSION:**

For these reasons; 1) Correctional Defendants Sondervan and Galley's Motion for Summary Judgment is granted and 2) Medical Defendants Tessema and VanMeter's Motion for Summary Judgment is denied. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: September 27, 2004

17